

1   Rustin K. Mangum (SBN 280,109)
    rustin@mangumririe.com
2   **MANGUM RIRIE LLP**
    999 Corporate Dr., Suite 255
3   Ladera Ranch, CA 92694
    Tel: (949) 699-2499
4
    *Attorney for Plaintiffs*
5   Alanna Zabel and AZ I AM, INC.

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   Alanna Zabel; AZ I AM, Inc.,          Case No.: 2:25-cv-05558 MEMF (Ex)

13           Plaintiffs,                    **FIRST AMENDED COMPLAINT
                                            FOR COPYRIGHT**
14       v.                                 **INFRINGEMENT**

                                            **Deleted:** AND BREACH OF CONTRACT
15   Lauren Sanchez; The Collective Book
     Studio LLC; Simon & Schuster LLC,      **DEMAND FOR JURY TRIAL**
16
             Defendants.
17

18

19

20

21

22

23

24

25

26

27

Plaintiffs Alanna Zabel ("Zabel") and AZ I AM, Inc., ("AZ I AM") (collectively, "Plaintiffs"), by and through their attorneys, for their Complaint against Lauren Sanchez ("Sanchez" or "Defendant"), The Collective Book Studio LLC ("Collective Book"), and Simon & Schuster LLC ("Simon & Schuster") (collectively, "Defendants") hereby allege as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as an action arising under the Copyright Act, 17 U.S.C. §§ 101, *et seq*. This Court has supplemental jurisdiction of the breach of contract claim pursuant to 28 U.S.C. § 1367.

2. This Court has personal jurisdiction over Defendants because, on information and belief, each has purposefully committed, within the state, acts from which Plaintiffs' claims arise and/or committed tortious acts outside California knowing and intending that such acts would cause injury to Plaintiffs within the state.

3. Specifically, based on information and belief, Defendants have purposefully availed themselves of the benefits of conducting business within the State of California by directing their activities with respect to the infringing work, including their marketing, promotion, and sale of the infringing work, to California residents, who are able to purchase and/or download the infringing work due to Defendants' activities. Upon information and belief, Defendants, and each of them, have received substantial revenues from their exploitation of the infringing works in California.

4. The Court also has general personal jurisdiction over Defendants, as each either resides in this state, has incorporated in this state, has its principal place of business in this state, and/or conducts continuous, systematic, and routine

1

1  business within the state of California and the County of Los Angeles and/or

2  within this district. Consequently, by virtue of their pervasive business contacts

3  and transactions within the State of California, Defendants are constructively

4  aware and can reasonably expect and/or anticipate being sued in this jurisdiction.

5     5.    Venue is proper in the United States District Court for the Central

6  District of California pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400.

7                                    **PARTIES**

8     6.    Alanna Zabel is an adult individual and a resident of Santa Monica,

9  California. Zabel is the author of the children's book, *Dharma Kitty Goes to Mars*,

10  and the owner of U.S. Copyright Reg. No. TX0009455913 for the same title.

11    7.    AZ I AM, Inc. is a Delaware corporation with its principal place of

12  business in Santa Monica, California. AZ I AM has a single owner and executive,

13  which is Alanna Zabel.

14    8.    Lauren Sanchez is an adult individual. On information and belief,

15  Sanchez is a resident of Beverly Hills, California. Sanchez is the author of the

16  book, *The Fly Who Flew to Space*.

17    9.    The Collective Book Studio LLC is a California limited liability

18  company with a principal place of business in Oakland, California. On

19  information and belief, The Collective Book Studio LLC is the publisher of the

20  book, *The Fly Who Flew to Space*.

21    10.   Simon and Schuster LLC is a New York limited liability company

22  with its principal place of business in New York City, New York. On information

23  and belief, Simon & Schuster LLC is the distributor of the book, *The Fly Who*

24  *Flew to Space*.

25  ///

26  ///

27

2

**PROCEDURAL POSTURE**

11.    Zabel, acting as a pro se litigant, first filed a claim for copyright infringement against Sanchez in California state court on September 17, 2024.

12.    Shortly after filing, an unsolicited attorney who had seen her filing informed Zabel that she cannot present her copyright claim in state court. With her limited procedural understanding and being untrained in legal process as a pro se litigant, this reality was not previously known to her. This attorney informed her that she could simply dismiss the state court claim and refile in federal court.

13.    Zabel filed to dismiss the state court claim on September 25, 2024, in order to pursue her claim in federal court, as required. Her claim was dismissed without prejudice the same day.

14.    Still proceeding as a pro se litigant, Zabel filed her claim for copyright infringement in the Central District of California on December 13, 2024. The case was assigned to the Honorable Fernando L. Aenlle-Rocha with Case No. 2:24-cv-10764-FLA-SSC.

15.    Shortly after filing, Southern California entered a state of emergency with severe wildfires sweeping through Los Angeles County in January 2025. At that time, Zabel was living within an evacuation warning area and twice evacuated her home. Also, over the previous three years, Zabel had volunteered at a trauma clinic in Pacific Palisades, and that trauma center entirely burned down in the fires. Zabel was actively assisting with the process of helping those affected by this loss. Zabel also worked as a mindfulness instructor at a local school where six of the children in her class lost their homes in the Pacific Palisades fire. Understandably, Zabel felt a disruptive and exhausting sense of being displaced and on alert.

16.     Overwhelmed by the demands of this state of emergency, Zabel, as a pro se litigant, struggled to find time for the demands of her litigation, including learning what all she needed to do. Seeking a solution, Zabel requested a "two- to three-week extension of time" to respond to the various litigation deadlines. But Sanchez refused to agree to any extension.

17.     Sanchez not only refused to agree to the short extension during this state of emergency, she increased the pressure on Zabel by threatening to file an anti-SLAPP motion and seeking attorney fees. Sanchez thus pressured Zabel to file a dismissal a second time.

18.     Due to the fires and pressure from the opposing side, Zabel realized that she needed counsel to represent her in her claims against Sanchez. On January 14, Zabel filed a request for dismissal, so she could find counsel to assist her with her copyright infringement claim. The Court approved the dismissal without prejudice on January 16.

19.     On information and belief, Sanchez pressured Zabel to dismiss the second case with the belief that Federal Rule of Civil Procedure 41 ("Rule 41") would prevent Zabel from refiling her claim once she found counsel to represent her—essentially trying to manufacture a Rule 41 bar to Zabel further pursuing her claim.

20.     Rule 41 provides, "[I]f the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B). Despite the language of this rule, many courts, including the Ninth Circuit have "recognized that 'in certain limited circumstances, [Rule 41] will not be literally applied.'" *Axon Enterprise Inc. v. Vievu LLC*, No. CV-17-01632-PHX-DLR, 2018 WL

4

317289 (D. Ariz. Jan. 5, 2018) (quoting *Lake Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 727 (9th Cir. 1991)).

21.    As in *Axon*, the facts here show that "Plaintiff's prior dismissals were neither purely unilateral nor done for an improper purpose." *Id.* And as was found in *Axon*, Plaintiff here should be permitted to pursue her claim. "Although Plaintiff has twice voluntarily dismissed actions based on or involving the same … claim alleged here, … strict application of Rule 41 would not further its purposes, nor would such a harsh result comport with the spirit and intent of the rules of civil procedure." *Id.* This finding holds just as true in this case.

## FACTUAL ALLEGATIONS

### The Personal Relationship Between Zabel and Sanchez

22.    Zabel has long been a yoga instructor, teaching studio classes as well as private yoga sessions at clients' homes. In 2006, Zabel began teaching private yoga sessions in the home of Suzy Shuster and Rich Eisen. These sessions became regularly scheduled classes and often included additional people who were invited to join the class. Sanchez was one of the additional people who attended the yoga classes at the home of Suzy Shuster and Rich Eisen.

23.    In addition to attending those group sessions, Sanchez asked Zabel to teach private yoga sessions in Sanchez's home sometime in 2007 or 2008. Sometime after these sessions began, Zabel and Sanchez became close friends. Zabel taught Sanchez yoga and Pilates in Sanchez's homes in Beverly Hills and Malibu. Sanchez also invited Zabel to private parties and events, which they sometimes attended together, and to Sanchez's home in Cabo San Lucas, Mexico.

24.    During the course of their friendship, Zabel gifted Sanchez several of the children's books Zabel had written as well as clothing from Zabel's AZ I AM active-wear collections. Sanchez wore this clothing on air for an episode of

5

1  myFoxLA and invited Zabel to sell her active wear and books at a private trunk

2  show for ExtraTV staff.

3      25.    Zabel's and Sanchez's friendship became so close that Sanchez

4  shared with Zabel intimate details about her life including details about her

5  cosmetic surgeries, details about breastfeeding her child, and intimate details

6  about her relationships. The types of details Sanchez shared are ones that are

7  shared only with close friends.

8      26.    As another example of the closeness of their friendship, in

9  communications with Sanchez, Zabel sometimes used the name "Monica" to refer

10  to Sanchez. This was a fun, personal nickname that Zabel used for Sanchez

11  because Sanchez had shared that she had romantic interest in Bill Clinton after she

12  met him in 2009. Sanchez seemed to have enjoyed this nickname.

13              **The Business Relationship Between Zabel and Sanchez**

14      27.    In 2008, Sanchez shared a story with Zabel about a helicopter flight

15  Sanchez had been on where a fly remained stuck on the windshield outside the

16  helicopter for the entire flight. Knowing Zabel's history writing children's books,

17  Sanchez and Zabel discussed Zabel helping Sanchez write a children's book based

18  on this experience.

19      28.    In 2009, Sanchez expressed to Zabel interest in partnering with her

20  on business endeavors, including with Zabel's company AZ I AM, Inc. (spelled

21  AZIAM, Inc. at that time). Sanchez signed a Non-Disclosure Agreement (NDA)

22  with AZ I AM, Inc. and introduced Zabel to Sanchez's business manager to set up

23  detailed discussions.

24      29.    The two explored a potential partnership for manufacturing

25  children's dolls, toys, and books. They discussed co-creating a 21-day fitness and

26  yoga program inspired by Zabel's book, *As I Am*, which Sanchez has openly

27

enjoyed and praised. They also discussed a potential opportunity for Sanchez to pursue a lingerie line through Ideal Living, a company for which Zabel was designing clothing.

30.    To help promote a potential yoga web series that Zabel was asked to be part of, Zabel invited Sanchez to join her in the yogamentary production called POSERS.

31.    Due to a subsequent falling out between Sanchez and Zabel, pursuit of these collaborations stalled.

**The Falling Out Between Zabel and Sanchez**

32.    In November 2009, Sanchez invited Zabel to her 40th birthday party being held at The Music Box in West Hollywood and featuring a private concert by Rick Springfield, who sang to Sanchez during the party. The party was a big event filled with Hollywood A-list actors and celebrities, as well as many mutual friends and other private clients of Zabel.

33.    During the party, the song *Boom Boom Pow* began to play, and Sanchez called for Zabel to join her on the dance floor. Even though no one else was dancing, Zabel joined Sanchez on the dance floor, after all it was Sanchez's birthday party. A significant number of the party attendees looked on as Sanchez and Zabel remained the only ones on the dance floor. On information and belief, Sanchez grew frustrated that Zabel was receiving positive attention from the party guests. As a result, Sanchez flicked Zabel away and turned her back on Zabel in a dramatic, humiliating way. Feeling deeply embarrassed and hurt, Zabel left the party immediately.

34.    The next day, Zabel drove to Sanchez's home to refund the remaining yoga sessions for which Sanchez had prepaid. Sanchez had previously purchased a 10-class package and three sessions remained unused. With the

7

**Deleted:** As the dancing continued, the onlookers paid more attention to Zabel's dancing rather than to Sanchez (likely because Zabel's dancing outshined Sanchez).

**Deleted:** with the

**Deleted:**

**Deleted:** Zabel was receiving

**Deleted:** Eventually,

refund, Zabel informed Sanchez that she was quitting working for her because she

did not appreciate Sanchez's "Jekyll and Hyde" interactions or deserve to be

treated the way Sanchez had treated her at the party.

35.    After this incident, Sanchez refused to respond to any messages from

Zabel even when Zabel attempted to reconcile. Sanchez essentially ghosted Zabel.

36.    On information and belief, Sanchez has harbored resentment toward

Zabel since this incident and has sought ways to exact revenge. One way Sanchez

did so was by copying Zabel's children's book, *Dharma Kitty Goes to Mars*, and

infringing Zabel's copyright.

### Zabel's Children's Books

37.    In addition to teaching yoga, Zabel is the author of many books

including seventeen children's books. She began writing and publishing children's

books in the year 2000.

38.    Most of Zabel's children's books center on the AZ I AM Girlz

characters Zabel created to teach and promote healthy living and positive social

endeavors for children. The AZ I AM Girlz comprise of a multi-cultural group of

girls who support each other on epic adventures and with their unique aspirations

to make positive change in the world. In 2024, Zabel made the decision to change

the brand name to AZ I AM Kidz as a means to open the products and teachings

to all.

39.    Zabel's book *Searching for Light* teaches children the importance of

humility, honesty, and gratitude through the adventures of Luz, a young,

determined mermaid.

40.    Zabel's book *Hanging Zen* centers on a surfer girl in Hawaii named

Yama whose choices teach children the power of being kind as well as the dangers

faced by our oceans and sea life.

**Deleted:** Many

**Deleted:** Kidz

**Deleted:** lifestyles

8

41.    Some of her books focus on other characters such as her book *Sticky the Fly's Web of Lies*, which teaches children about overcoming insecurities, the power of honesty, and not taking what belongs to others. And her book *Being Rosie* focuses on a red rose named Rosie who teaches children to accept themselves and others for who they are and not to bully others.

42.    Zabel's book *Dharma Kitty Goes to Mars* centers on Pratya, an AZ I AM Girl from India who is smart, focused, and loves science. In the story, Pratya is unintentionally launched into space with her pet cat, Dharma Kitty. The book teaches children to control their reactions and manage their anxieties.

43.    Zabel's books are also associated with charitable contributions, aligning with themes central to each work.

44.    Zabel has received praise for her ability to teach children and specifically for the stories she creates in her line of children's books including *Dharma Kitty Goes to Mars*.

45.    Throughout her years of writing, Zabel has often given her books to clients and friends as gifts.

**Sanchez's Knowledge of Zabel's Book *Dharma Kitty Goes to Mars***

46.    Sanchez clearly knows about Zabel's line of children's books and specifically knows of the book *Dharma Kitty Goes to Mars*.

47.    First, during their friendship, Zabel gifted several of her children's books to Sanchez.

48.    Second, with Sanchez recognizing Zabel's success in publishing children's books, the two discussed the possibility of Zabel helping Sanchez write a children's book based on an experience Sanchez had while flying in a helicopter. The book would focus on a fly who travels while clinging to the windshield of a helicopter.

9

**Deleted:** g

49.     Later, Sanchez expressed interest in partnering with Zabel and her
company, AZ I AM, Inc. In 2009, Sanchez entered into an NDA with AZ I AM,
Inc., which is owned by Zabel, to further discussions regarding a partnership to
create children's books, dolls, and toys as well other business opportunities. Under
this NDA, confidential information includes "any information … about the
Disclosing Party's … existing or future products." And the Receiving Party agrees
they "will not use … or permit others to use [the confidential information] for any
purpose other than that for which it is disclosed." The NDA specifies no
expiration and expressly states it "will survive and remain in full force and effect
even if the parties end the business dealings giving rise to it."

50.     In 2019, Sanchez visited Zabel's studio in Brentwood, California to
attend a yoga class being taught by the girlfriend of one of Sanchez's friends.
When Sanchez arrived, she saw a display of Zabel's books and expressed
recognition and admiration for them. When Sanchez then saw Zabel behind the
reception desk, Sanchez walked behind the desk to give Zabel a big hug. The two
then spent a few minutes catching up until it was time for Sanchez's class to start.

51.     Due to this experience as well as positive media coverage of Zabel's
relationship with Jeff Bezos, the founder of the online marketplace Amazon.com
and the space technology company Blue Origin, Zabel believed that Sanchez had
matured since the earlier days of their friendship.

52.     In 2022, recognizing that Sanchez had become the Vice Chair of
Bezos Earth Fund, and in reliance on their previously signed NDA, Zabel reached
out to Sanchez via email, text, and Instagram to share specifics about Zabel's
book concept of a cat who flies to Mars, and suggesting they could donate
proceeds from the book's sales to the Bezos Earth Fund and/or the Bezos
Academy. Thus, Zabel again commenced discussions the two previously had

1  regarding partnering on children's books, trusting Sanchez based on their prior

2  business discussions.

3    53.    Also in 2022, Zabel likewise sent an email to Jeff Bezos informing

4  him of her upcoming book titled *Dharma Kitty Goes to Mars* as well as sharing

5  details about her toy and doll products. Zabel was seeking to discuss a partnership

6  with Amazon. Zabel received a response from one of Bezos's representatives

7  stating that Bezos had received the email and had directed his team to assist.

8    54.    With no substantive response from Sanchez or Bezos, Zabel moved

9  forward with her book and published *Dharma Kitty Goes to Mars* in December

10  2022. It later became available for purchase on Amazon.com on March 23, 2023.

11    **Sanchez Publishes Her Own Children's Book**

12    55.    In early 2023, Sanchez announced her intent to release a children's

13  book titled "Flynn, The Fly Who Flew" later in the year.

14    56.    On information and belief, Sanchez claims the inspiration for this

15  children's book came from her experience with a fly that flew with her on a

16  helicopter ride. This is consistent with the concept that Sanchez had shared with

17  Zabel years earlier. But rather than follow Sanchez's original concept and story,

18  Sanchez changed the book's storyline to instead concern a fly who goes to space.

19  Not only is this similar to Zabel's book about a cat who goes to space, which had

20  been published prior to Sanchez's announcement, but when Sanchez's book is

21  released, the story largely mirrored Zabel's story.

22    57.    Sanchez's children's book, retitled as *The Fly Who Flew to Space*,

23  was released in September 2024—more than a year and a half after Sanchez

24  announced the upcoming children's book. Sanchez is listed as the sole author. On

25  information and belief, the book is published by Defendant The Collective Book

26  Studio and is distributed by Defendant Simon & Schuster.

27

58.     *The Fly Who Flew to Space* is being sold at online retailers such as Amazon.com where the book is also being publicly displayed through a "flip video." The same "flip video" is available on youtube.com at https://www.youtube.com/watch?v=R1t9nMRWgs0. On information and belief, the flip video is provided by Defendant The Collective Book Studio and/or Defendant Simon & Schuster.

59.     After publication, *The Fly Who Flew to Space* appeared on the *New York Times* Best Sellers list and on USA TODAY's Best-selling Booklist.

**Sanchez's Copying of Zabel's *Dharma Kitty Goes to Mars***

60.     While Sanchez claims her book was inspired by her experience flying with a fly in a helicopter, the book's story is significantly different. And the content in her book proves that she copied content, subject matter, plot points, scenes and story arcs of Zabel's book, *Dharma Kitty Goes to Mars*. In fact, for each page of Sanchez's book, the primary subject matter and/or action is taken directly from Zabel's book.

61.     The chart below illustrates many of the similarities between the two books. (This is not an exhaustive list of similarities or all evidence of copying. It is simply demonstrative.) The left half of the chart relates to the book, *The Fly Who Flew to Space*, and identifies each page number and the primary plot point for that page. The right half of the chart lists the page number for the corresponding plot point found in *Dharma Kitty Goes to Mars*.

| *The Fly Who Flew to Space* | | *Dharma Kitty Goes to Mars* | |
|---|---|---|---|
| Pg. | Plot Point | Pg. | Plot Point |
| 1 | Introduces the main character (Flynn) | 2 | Introduces the main character (Pratya) |

12

| | 2 | Identifies geographic location of home and introduces the family | 1 2-3 | Identifies geographic location Introduces the family |
|---|---|---|---|---|
| | 3 | Attending school and showing STEM-themed learning | 6 10 | Attending school (also pp. 5-11) STEM-themed learning |
| | 4 | Expression of the need to focus at school | 9 | Expression of the need to focus at school |
| | 5 | Expression of interest in space travel | 9 | Expression of interest in space travel |
| | 6 | Identifies character's regular activities | 10 | Identifies character's regular activities |
| | 7 | Visits (inside) a launch control room | 12 | Visits (walking past) a launch control room |
| | 8 | Visits rocket (in barn) | 12-13 | Visits rocket (in launch facility) |
| | 9 | Peeking inside the crew capsule (showing a console) | 13 | Inside the crew capsule (sitting at the console) |
| | 10 | Inside crew capsule when rocket launch initiated | 14 | Inside crew capsule when rocket launch initiated |
| | 11 | Doors close, loud noise, flashing lights; unable to get out with a cry for help looking out window. | 15 16 | Doors close, loud noise, flashing lights; unable to get out. Cry for help looking out window. |
| | 12 | Rocket is airborne with character looking out window | 17 | Rocket is airborne with character looking out window |
| | 13 | Sights seen from rocket | 18 | Sights seen from rocket |
| | 14 | Sights seen from rocket | 18 | (A single page) |
| | 15 | Sights seen from rocket | 18 | (A single page) |
| | 16 | Sights seen from rocket | 18 | (A single page) |
| | 17 | Describing the vastness of space (with focus on lack of light) | 20 | Describing the vastness of space (with focus on lack of sound) |
| | 18 | The other passengers start to stir | 21 | The other passenger starts to stir |

13

| 19 | Interaction with travel companion | 22 | Interaction with travel companion |
| 20 | Interaction with another astronaut | 26 | Interaction with a Martian creature |
| 21 | Teaching from the astronaut | 28-30 | Teaching from the Martian creature |
| 22 | Actions for returning to Earth | 36-37 | Actions for returning to Earth |
| 23 | The return to Earth | 38 | The return to Earth |
| 24 | Character's concern for parent | 30-31 | Character's concern for parents |
| 25 | Communications previously sent to family | 30 | Communications previously sent to family |
| 26 | Hugging parent upon return | 39 | Hugging parents upon return |
| 27 | Main character changed by visit to space | 41 | Main character changed by visit to space |
| 28 | Receiving award for going to space | 40 | Receiving awards for going to space |
| 29 | Character's outlook on future adventures | 41 | Character's outlook on future adventures |

62.    As shown in the chart above, the major plot points and overall story arc of these two books are nearly *exactly the same*. The major plot point on each page of Sanchez's *The Fly Who Flew to Space* is copied from Zabel's *Dharma Kitty Goes to Mars*. And, for the most part, the plot points are in the same order.

63.    To be clear, Zabel does not simply allege to have a copyright in just the basic concept of an animal flying to space. Zabel's copyright does, however, include all original expression that Zabel contributed to her book. This includes, among other things, her selection of scenes and plot points she used for telling her story as well as the order she chose to present those scenes and plot points to create her story. There are endless options for the selection of scenes and plot points, even for a children's book about an animal going to space. But as the chart above reveals (as well as a side-by-side comparison of the two books), Sanchez

14

chose to follow Zabel's book scene for scene, plot point by plot point, and page by page. The level of similarity between the two books could not have occurred without copying the original expression in Zabel's book *Dharma Kitty Goes to Mars*.

64.    Certainly, some individual scenes can be described as *scenes a faire* of a story about traveling to space. The infringement is not found in the use of any such *scenes a faire*. But the overall selection of scenes and the placement of the selected scenes in the overall story shows that Sanchez copied the original expression from Zabel's book.

65.    A sampling of children's books regarding an animal traveling to space, reveals a very broad array of choices in plot points and storylines applicable to the concept of a children's book about an animal going to space. There is vast variation in the ways animals get to space, what the animals do prior to going to space, how animals get access to a space vehicle, the reasons for going to space, how the launch occurs, existence of and types of interactions while in space, how other characters react upon return, what the animal itself does upon return, and the list goes on and on.

66.    Most telling of the copyright infringement, when viewing each story as a whole (from beginning to end), each book follows the same storyline. Such a comparison shows that Zabel's story was copied to create *The Fly Who Flew to Space*. At each page, there are innumerable opportunities to change course, take a different turn, create a different plot point, introduce a different storyline. But here, the two stories share the same storyline at each page, as illustrated in part by the table above.

67.    In addition, Sanchez also substantially copied specific scenes from Zabel's book. One example of this copying is seen in the following two-page

15

layout from each book (shown side by side as viewed in the printed books) showing the moment when the main character gets trapped inside a launching rocket. In each book, the main character has a hand pressed against a window with an exclamation of "help!" followed by looking out the window after the rocket is airborne.

Page images from *The Fly Who Flew to Space*:



Page images from *Dharma Kitty Goes to Mars*:



68.    As another example, the following scene from each book shows when the main character arrives back on Earth. In each book the main character is hugged by a parent (or parents) with others in the scene surrounding them.

Page image from *The Fly Who Flew to Space*:



Page image from *Dharma Kitty Goes to Mars*:



17

69.    As another example, the following images show the final two pages from each book. In each, the main character is presented an award (by a hand in one and with a handshake in the other) while others watch; the following page then shows the main characters standing in the same pose (elbows bent and hands in fists showing a display of excitement).

Page images from *The Fly Who Flew to Space*:



Page images from *Dharma Kitty Goes to Mars*:



18

70.     These examples are merely representative of the copying evidenced by viewing the two books.

71.     With the level of similarity between these two books, it is not possible for *The Fly Who Flew to Space* to have been written without referencing and copying the story and scenes in *Dharma Kitty Goes to Mars*. Sanchez's book has a different character with a different destination (even a flight that closely parallels a Blue Origin space flight rather than a trip to Mars), but on the whole, Sanchez's book simply copies Zabel's story while implementing these simple changes. In doing so, Sanchez infringed Zabel's copyright in *Dharma Kitty Goes to Mars*.

**Sanchez Trolling of Zabel Regarding Zabel's *Dharma Kitty Goes to Mars***

72.     On information and belief, Sanchez knew that Zabel would recognize that the story in *The Fly Who Flew to Space* was copied from *Dharma Kitty Goes to Mars*. Sanchez did this to exact revenge for the resentment Sanchez continued to feel towards Zabel.

73.     On information and belief, Sanchez knew that due to her connections, including her engagement to Jeff Bezos and her connections with the Kardashian family, she would be able to get her book listed on the *New York Times* Best Sellers list. On information and belief, Sanchez believed this would "show up" Zabel because Sanchez was able to become a best seller using Zabel's story.

74.     On information and belief, Sanchez sought other opportunities to exact revenge against Zabel.

75.     For example, in Zabel's books relating to the different AZ I AM Girlz, each character has a unique catch phrase associated specifically with them. Examples include "I AM SMART," and "I AM KIND," and "I AM CREATIVE."

In *Dharma Kitty Goes to Mars*, the catch phrase used for the AZ I AM Girl character, Pratya, is "I AM FOCUSED."

76.     Sanchez is very familiar with Zabel's line of children's books. On information and belief, Sanchez knows that the catch phrase for the character in *Dharma Kitty Goes to Mars* is, "I AM FOCUSED." Thus, Sanchez intentionally incorporated that catch phrase into her book by having her fly character declare, "I am focused."

77.     On information and belief, Sanchez also gave her main character a rocket logo on the shirt it wore to space to mimic the rocket logo Zabel's main character wore on the space suit she wore while in space.

78.     As another example, in November 2022, it was announced that Sanchez was planning a trip to space aboard Blue Origin's New Shepard rocket. That trip finally occurred in April 2025, which gave Sanchez nearly two and a half years to prepare. On information and belief, during this preparation time, Sanchez decided on another way to exact revenge on and troll Zabel.

79.     Sanchez's flight with Blue Origin was, according to Blue Origin, its 11th human spaceflight. In each of the previous ten human spaceflights, the astronauts aboard the spacecraft wore the same space suits, which had distinctive black bands at the elbows and knees as well as a black stripe from the neck to shoulder. Even Jeff Bezos, Blue Origin's founder, wore this space suit. And this Blue Origin space suit has the same appearance as the space suit worn by the astronauts in Sanchez's *The Fly Who Few to Space*.

80.     For Sanchez's space flight with Blue Origin, Sanchez did not wear the space suit all other Blue Origin crew members had worn. Instead, on information and belief, she designed a new space suit for herself, and the other crew members on her flight, to wear. This space suit would have a different look

1    from the space suits worn by the crew members of all previous Blue Origin space

2    flights (and the astronauts illustrated in Sanchez's book). The space suit Sanchez

3    designed instead closely resembles the space suit worn by the main character in

4    *Dharma Kitty Goes to Mars*. On information and belief, Sanchez deliberately

5    designed the space suits for her flight to resemble the space suit worn in Zabel's

6    book, *Dharma Kitty Goes to Mars*.

7    **Copyright Infringement of Zabel's Book**

8         81.    In March 2024, prior to publication of Sanchez's book, Zabel sent

9    cease-and-desist letters to each of Sanchez, the book's publisher, The Collective

10    Book Studio, and the book's distributor, Simon & Schuster. In each letter, Zabel

11    identified her book, *Dharma Kitty Goes to Mars*, similarities between the two

12    books known to Zabel at that time, and the fact that Zabel had reached out to

13    Sanchez the previous year to share details of her book *Dharma Kitty Goes to*

14    *Mars*. Each letter also asked that Sanchez remove "any material that is too similar

15    in content, language or story" to that found in Zabel's book.

16         82.    In a letter response, Sanchez asserted "While both books broadly

17    concern an animal traveling to space … [t]here is no other meaningful similarity

18    between Ms. Sanchez's book and yours" (emphasis added). The chart above (see

19    paragraph 61), as well as any objective comparison of the two books, shows that

20    such an assertion has no merit. On information and belief, and judging by the

21    resulting publication, neither Sanchez, The Collective Book Studio, nor Simon &

22    Schuster took sufficient action in accordance with Zabel's letter.

23         83.    Sanchez's book, *The Fly Who Flew to Space*, copied numerous

24    original expressions and copyrightable elements of Zabel's work including, but

25    not limited to page-by-page plot points, story arcs, character types, scenes,

26    situations, descriptors, and other expressive elements of Zabel's work. Sanchez's

27

21

**Deleted:** a

**Deleted:** both

**Deleted:** and

**Deleted:** this

**Deleted:** The

**Deleted:** nor

**Deleted:** any

**Deleted:** substantive

1    work is either an unauthorized copy of Zabel's literary work or an unauthorized

2    derivative work prepared therefrom.

3        84.    As of the date of this Complaint, Sanchez's book remains available

4    for purchase and remains an infringing work. It is available at least in both

5    English and Spanish languages. Both infringe Zabel's copyright.

6        85.    Zabel has suffered severe losses due to Sanchez's actions, and

7    Sanchez profited from Zabel's work, even receiving recognition as a *New York*

8    *Times* Bestseller, which Sanchez has used to her benefit including, among other

9    things, for reputational benefit and to further market her infringing work.

10        86.    Sanchez's wrongful actions have caused Zabel severe distress. The

11    experience detracted both psychologically and economically from Zabel's

12    experience of sharing her book. Because of Sanchez's wrongful acts, Zabel had to

13    expend considerable efforts dealing with her work being taken, copied, and used

14    without her permission, as well as on having another person take credit for her

15    work.

16        87.    In copying Zabel's work, Sanchez willfully and intentionally sought

17    to misappropriate Zabel's hard work for Sanchez's own profit without bearing the

18    cost thereof. The creative energy and time commitment involved in crafting a

19    storyline, characters, settings, scenes, and more was a substantial investment for

20    Zabel, an individual who runs her own small business. Sanchez sought to reap the

21    rewards of writing a children's book without investing the same time, effort, and

22    creative thought into the project, and sought to take away profits from Zabel that

23    she would have realized but for Sanchez's wrongful acts.

24        88.    *Dharma Kitty Goes to Mars* is an original work, copyrightable under

25    the Copyright Act. As shown in Exhibit 1, Zabel has received a copyright

26    registration for this work with registration number TX0009455913.

27

89.    Zabel has never authorized Sanchez, or any of the Defendants, to
copy, reproduce, distribute, publish, display, or sell any of the copyrighted
material from *Dharma Kitty Goes to Mars*, nor to prepare derivative works based
on *Dharma Kitty Goes to Mars*.

90.    Defendants infringed Zabel's exclusive rights in *Dharma Kitty Goes
to Mars* by copying, displaying, reproducing, publishing, distributing, and selling
the copyrighted work and/or making derivative works derived therefrom without
Zabel's permission.

91.    Each infringing copy, duplication, sale, license, or display of the
infringing work, as well as the threat of continuing the same, constitutes a separate
claim against Defendants under the Copyright Act. Zabel has sustained, and will
continue to sustain, substantial damage to the value of her copyrights in that the
previously described activities of Defendants have diminished and will continue to
diminish the revenues and credit that Zabel would otherwise receive. In addition,
Defendants have realized unlawful and unjust profits from their unauthorized and
illegal copying, duplication, distribution, and display of copies of the infringing
work.

92.    As a direct result of the conduct of Defendants, Plaintiffs have
suffered and continue to suffer damages in an amount to be determined. Zabel has
been unable to realize profit from her work as attention for her work was
overshadowed by the unauthorized use and copying by Defendants as well as by
the use of Defendants' overwhelming resources and corporate presence, which
have diminished Zabel's own efforts. Zabel has also suffered, and continues to
suffer, reputational harm due to Sanchez's actions.

93.    Defendants continue to infringe Zabel's copyright, and unless
temporarily, preliminarily and permanently enjoined by Order of this Court, will

23

1  continue to infringe said copyrights, all to Zabel's irreparable injury. As a result of

2  Defendants' acts of infringement, Zabel is without an adequate remedy at law in

3  that damages are difficult to ascertain and, unless injunctive relief is granted,

4  Zabel will be required to pursue a multiplicity of actions.

5      94.    Defendants have committed the aforesaid acts deliberately, willfully,

6  and maliciously without regard to Zabel's proprietary rights.

7                        **FIRST CLAIM FOR RELIEF**

8                  **(Copyright Infringement – All Defendants)**

9      95.    Plaintiffs repeat and re-allege paragraphs 1 through 94, inclusive, as

10  if fully set forth herein.

11      96.    As described above, Defendants conduct constitutes willful copyright

12  infringement under the Copyright Act.

13      97.    Defendant Lauren Sanchez has infringed Zabel's copyright at least by

14  copying and/or adapting Zabel's copyrighted work, as described and/or by

15  creating a derivative work. Defendant Sanchez has also enabled and/or

16  contributed to publishing the infringing work and distributing the infringing work

17  by working with The Collective Book Studio and Simon & Schuster on these

18  activities.

19      98.    Defendant The Collective Book Studio has infringed Zabel's

20  copyright at least by publishing Zabel's copyrighted work, as described.

21  Defendant The Collective Book Studio has also enabled and/or contributed to

22  distributing the copyrighted work by working with Simon & Schuster on

23  distribution. On information and belief, The Collective Book Studio has also

24  infringed Zabel's copyright by publicly displaying the infringing work through a

25  flip book video available online including at

26  https://www.youtube.com/watch?v=R1t9nMRWgs0.

27

Deleted: 91

Deleted: reproducing

99.    Defendant Simon & Schuster has infringed Zabel's copyright at least by distributing the infringing work, as described. On information and belief, Defendant Simon & Schuster has also infringed Zabel's copyright by publicly displaying the infringing work through a flip book video available online including at amazon.com.

100.    As a result of this copyright infringement, Zabel has been damaged in an amount to be proven at trial.

101.    Zabel is entitled to recover the actual damages she suffered as a result of the infringement.

102.    Zabel is also entitled to recover any profits of Defendants that are attributable to the infringement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek judgment against Lauren Sanchez, The Collective Book Studio, and Simon & Schuster, as follows:

A.    A permanent injunction prohibiting Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, from directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Zabel's rights protected by the Copyright Act; an order directing Defendants to include credits on behalf of Zabel on any awards, accolades, events of prestige and/or other public recognition attributed to *The Fly Who Flew to Space*;

B.    An award of actual damages pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial;

C.    An award of Defendants' profits pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial;

25

**Deleted:** SECOND CLAIM FOR RELIEF¶
(Breach of Contract – Lauren Sanchez)¶
Plaintiffs repeat and re-allege paragraphs 1 through 99, inclusive as if fully set forth herein.¶
In 2009, Sanchez and Zabel, through her company AZ I AM, Inc., entered into a valid contract titled "Non Disclosure Agreement." The terms of this contract remain valid and enforceable. ¶
In accordance with this contract, Zabel shared with Sanchez Confidential Information about future products including children's books. One such disclosure was sharing details about Zabel's upcoming book *Dharma Kitty Goes to Mars*. ¶
Zabel has fully performed her obligations under the contract. ¶
Sanchez breached the contract by disclosing and using the confidential information shared by Zabel in the course of announcing, writing, publishing, distributing, marketing, and/or displaying the book *The Fly Who Flew to Space*.¶
As a result of Sanchez's breach, Plaintiffs have been damaged in an amount to be proven at trial. ¶
In accordance with the contract, Plaintiffs are entitled to obtain injunctive relief. ¶

**Deleted:** <#>A permanent injunction requiring Sanchez and her agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to comply with the Non Disclosure Agreement agreed to between Sanchez and Zabel.

D.   An award of costs under 17 U.S.C. § 505 or as otherwise provided by law;

E.   Impoundment and destruction of infringing copies;

F.   An award of pre-judgment interest and post-judgment interest at the maximum amount allowed by law; and

G.   For such other relief as the Court deems just and proper.

26

Dated: July 2, 2025                    Respectfully submitted,

                                       MANGUM RIRIE LLP

                                       /s/ Rustin K. Mangum

                                       Rustin K. Mangum
                                       *Attorney for Plaintiffs*
                                       Alanna Zabel and AZ I AM, INC.

**REQUEST FOR A JURY TRIAL**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 2, 2025                    Respectfully submitted,

                                       MANGUM RIRIE LLP

                                       /s/ Rustin K. Mangum

                                       Rustin K. Mangum
                                       *Attorney for Plaintiffs*
                                       Alanna Zabel and AZ I AM, INC.

**Deleted:** June

**Deleted:** 18

**Deleted:** June 1

**Deleted:** 8