1 | Terry W. Bird - State Bar No. 49038
      tbird@birdmarella.com
2 | Oliver Rocos - State Bar No. 319059
      orocos@birdmarella.com
3 | Sarah P. Guinee - State Bar No. 353544
      sguinee@birdmarella.com
4 | BIRD, MARELLA, RHOW,
   | LINCENBERG, DROOKS & NESSIM, LLP
5 | 1875 Century Park East, 23rd Floor
   | Los Angeles, California 90067-2561
6 | Telephone: (310) 201-2100
   | Facsimile: (310) 201-2110
7 |
8 | Attorneys for Defendants Lauren Sanchez,
   | The Collective Book Studio LLC, and
   | Simon & Schuster LLC
9 |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| Alanna Zabel; AZ I AM, Inc., | CASE NO. 2:25-cv-05558 MEMF (Ex) |
|---|---|
| Plaintiffs, | Assigned to: |
| | Hon. Maame Ewusi-Mensah Frimpong |
| v. | **DEFENDANTS LAUREN SANCHEZ, THE COLLECTIVE BOOK STUDIO LLC, AND SIMON & SCHUSTER LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Lauren Sanchez; The Collective Book Studio LLC; Simon & Schuster LLC, | |
| Defendants. | |
| | [*Filed Concurrently with Request for Judicial Notice and [Proposed] Order*] |
| | Hearing: |
| | Date:    October 2, 2025 |
| | Time:    10:00 a.m. |
| | Place:   350 W. 1st Street, |
| |          Courtroom 8B, 8th Floor |
| |          Los Angeles, California 90012 |

## NOTICE OF MOTION

TO PLAINTIFFS ALANNA ZABEL, AZ I AM INC. and the COURT:

PLEASE TAKE NOTICE that on October 2, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Maame Ewusi-Mensah Frimpong, United States District Judge of the Central District of California in Courtroom 8B of the United States District Courthouse located at 350 W. 1ˢᵗ Street, Los Angeles, California, Defendants Lauren Sanchez, Collective Book Studio, and Simon & Schuster LLC ("Defendants") will, and hereby does, move for dismissal of Plaintiff Alanna Zabel ("Plaintiff") and AZ I AM Inc.'s First Amended Complaint (the "FAC") pursuant to Federal Rules of Civil Procedure 12(b)(6).

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities and the Request for Judicial Notice filed contemporaneously herewith, the reply papers, the pleadings on file, and such other evidence and argument as the Court may receive.

Pursuant to Local Rule 7-3, counsel for Defendants met and conferred with Counsel for Plaintiff by telephone to discuss the grounds for Defendants' Motion to Dismiss on Friday, June 27, 2025, and again on Monday, June 30, 2025. After Plaintiff filed the First Amended Complaint ("FAC") to eliminate a state law claim, the parties again met and conferred on July 2 and July 21, 2025, to confirm that their positions had not changed as to the Motion to Dismiss the Copyright Act claim with respect to any of the Defendants.

///
///
///
///
///
///

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1   DATED:  August 6, 2025              Terry W. Bird
2                                        Oliver Rocos
                                         Sarah P. Guinee
3                                        Bird, Marella, Rhow,
                                         Lincenberg, Drooks & Nessim, LLP
4

5
                                         By: _____
6
                                                   Oliver Rocos
7                                          Attorneys for Defendant Lauren Sanchez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

NOTICE OF MOTION.................................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES........................................ 10

I.    INTRODUCTION ................................................................................. 10

II.   FACTUAL BACKGROUND .................................................................. 11

    A.    Plaintiff Has Not Spoken With Ms. Sanchez Since 2009.................... 11

    B.    Plaintiff Published *Dharma Kitty Goes to Mars*............................ 11

    C.    Ms. Sanchez Published *The Fly Who Flew To Space*.......................... 12

    D.    Plaintiff Previously Has Filed And Dismissed Two Lawsuits
          Asserting Ms. Sanchez Infringed On Her Copyright........................... 12

    E.    Plaintiff Files The Instant Case................................................ 13

III.  LEGAL STANDARD ............................................................................ 13

IV.   AZ I AM LACKS STANDING TO BRING A COPYRIGHT CLAIM ........ 14

V.    PLAINTIFF ZABEL IS PRECLUDED FROM BRINGING THIS
     COMPLAINT UNDER THE TWO-DISMISSAL RULE............................ 14

    A.    This Is The Third Action Based On the "Same Transactional
          Nucleus of Facts."........................................................... 14

    B.    Plaintiff's Reliance on *Axon* Is Misplaced............................ 16

    C.    Rule 41 Also Precludes A Copyright Claim Against Collective
          And Simon & Schuster ...................................................... 18

VI.   PLAINTIFF FAILS TO PLEAD A COPYRIGHT CLAIM.......................... 20

    A.    Lack of Substantial Similarity Is Ripe At Motion To Dismiss
          Stage........................................................................ 20

        1.    Courts Must Consider The Actual Works ........................ 20

        2.    Courts Must Filter Out Non-Protectible Elements .................... 21

    B.    The Works Are Not Substantially Similar ................................ 22

        1.    Plaintiff's Table Does Not Show Substantial Similarity........... 23

        2.    Plaintiff Cannot Own The Phrase "I Am Focused" .................. 27

        3.    Plaintiff Does Not Show Infringement Of A Rocket
            Design ................................................................. 28

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

C.    The Works Are Not Otherwise Similar ...................................................28

D.    The Remaining Allegations Highlight The Absence Of Merit.............29

E.    The Court Should Dismiss The Copyright Claim With Prejudice .......30

VII.    CONCLUSION ............................................................................................30

CERTIFICATE OF COMPLIANCE (L.R. 11-6.2.) ................................................31

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Apple Comput., Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ........................................................21, 25

*Apps v. Universal Music Grp., Inc.*,
  763 Fed.App'x 599 (9th Cir. 2019) .....................................................27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................13, 14

*Axon Enter. Inc. v. Vievu LLC*,
  No. CV-17-01632-PHX-DLR, 2018 WL 317289 (D. Ariz., Jan. 5,
  2018) ..............................................................................................................16

*Bala v. Bank of Am., N.A.*,
  No. CV 15-3305-MWF(JEMx), 2015 WL 4886043 (C.D. Cal. Aug.
  14, 2015) ......................................................................................................15

*Basile v. Warner Bros. Ent., Inc.*,
  No. CV 15-5243-DMG, 2016 WL 5867432 (C.D. Cal. Jan. 4, 2016) ..............20

*Benay v. Warner Bros. Entertainment*,
  607 F.3d 620 (9th Cir. 2020) ........................................................21, 26

*Berkic v. Crichton*,
  761 F.2d 1289, 1293 (9th Cir. 1985) ........................................21, 22, 23

*Calihan v. Cate*,
  No. 2:12-cv-2937-MCE-EFB P., 2015 WL 814027, at *6 (E.D. Cal.
  Feb. 25, 2015) ............................................................................................17

*In re Camacho*,
  489 B.R. 837 (E.D. Cal. Mar. 18, 2013) .........................................17

*Carlini v. Paramount Pictures Corp.*,
  No. 21-55213, 2022 WL 614044 (9th Cir. Mar. 2, 2022) ................20

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ..............................................*passim*

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

*Christianson v. W. Pub. Co.*,
   149 F.2d 202 (9th Cir. 1945) ................................................................. 20

*Corbello v. Valli*,
   974 F.3d 965 (9th Cir. 2020) ................................................................. 22

*Data E. USA, Inc. v. Epyx, Inc.*,
   862 F.2d 204 (9th Cir. 1988) ........................................................... 10, 21

*Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*,
   499 U.S. 340 (1991) .............................................................................. 20

*King v. Atiyeh*,
   814 F.2d 565 (9th Cir. 1987) ................................................................. 17

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) ................................................................. 22

*Lake at Las Vegas Invs. Grp., Inc. v. Pacific Malibu Dev. Corp.*,
   933 F.2d 724 (9th Cir. 1991) ...................................................... 10, 16, 18

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................. 13

*Marin v. Marshall*,
   No.: 23-cv-336-RSH-BLM, 2025 WL 1082745 (S.D. Cal. Apr. 10, 2025) ..................................................................................................... 17

*Masterson v. Walt Disney Co.*,
   821 Fed. App'x. 779 (9th Cir. 2020) ..................................................... 20

*Metcalf v. Bochco*,
   294 F.3d 1069 (9th Cir. 2002) ............................................................... 22

*Narell v. Freeman*,
   872 F.2d 907 (9th Cir. 1989) ................................................................. 27

*Olson v. National Broad. Co., Inc.*,
   855 F. 2d 1446 (9th Cir. 1988) .............................................................. 27

*Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) ................................................................. 13

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ................................................................ 30

*Rice v. Fox Broadcasting Co.*,
  330 F.3d 1170 (9th Cir. 2003) ................................................................ 23

*Rose Court, LLC v. Select Portfolio Serv., Inc.*,
  119 F.4th 679 (9th Cir. 2024) ........................................................*passim*

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) ......................................................... 25, 28

*Silas v. Home Box Office, Inc.*,
  201 F. Supp. 3d 1158 (C.D. Cal. Aug. 17, 2016) ................................. 25

*Skidmore v. Led Zeppelin*,
  84 F.3d 581, 589 (2d Cir. 1996) ............................................................ 21

*Sybersound Recs., Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .............................................................. 14

*TV One LLC v. BET Networks*,
  No. CV 11-08983 MMM (Ex), 2012 WL 13012674 (C.D. Cal. Apr.
  2, 2012) ................................................................................................. 14

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986) ........................................................ 24, 25, 27

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996) .................................................................... 21

*Wood v. SGT Inv.*,
  No. 23-15939, 2025 WL 1248417 (9th Cir. 2025) ............................... 17

*Zella v. E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (N.D. Cal. 2007) ................................................ 20

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(6) ...................................... 13, 20

Federal Rules of Civil Procedure 41 ............................................*passim*

Federal Rules of Civil Procedure 41(a)(1) ........................................... 16

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

Federal Rules of Civil Procedure 41(a)(1)(B) ................................................... 10, 14

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is Plaintiff's *third* copyright lawsuit in less than a year against Defendant Lauren Sanchez, having voluntarily dismissed the first two.  In this latest iteration, as in the prior two, Plaintiff again alleges that Ms. Sanchez's work *The Fly Who Flew To Space* ("*The Fly*") infringes upon the "basic concept" in Plaintiff's book, *Dharma Kitty Goes To Mars* ("*Dharma Kitty*").  Her claim is frivolous.

As a threshold issue, Federal Rules of Civil Procedure 41(a)(1)(B) is clear that Plaintiff's voluntary dismissal of her first two lawsuits operated "as an adjudication on the merits," *i.e.*, a dismissal *with prejudice.*  Plaintiff is, therefore, precluded from filing this action.  *See Rose Court, LLC v. Select Portfolio Serv., Inc.*, 119 F.4th 679, 690 (9th Cir. 2024) (plaintiff's dismissal of two prior actions as to the same issue barred its third action).  Plaintiff's attempts to excuse her prior dismissals are of no moment—the law does not consider them.  *Lake at Las Vegas Invs. Grp., Inc. v. Pacific Malibu Dev. Corp.,* 933 F.2d 724, 726-27 (9th Cir. 1991) (Rule 41 "does not consider the plaintiff's reasons for seeking a voluntarily dismissal.").  Because Plaintiff's claims against The Collective Book Studio LLC ("Collective") and Simon & Schuster LLC ("Simon & Schuster") are based on Ms. Sanchez's alleged copyright infringement, the law prohibits the claims against them too.

The copyright claim also fails on the merits because AZ I AM lacks standing to assert it and *The Fly* and *Dharma Kitty* are not substantially similar.  The Ninth Circuit considers "substantial similarity" at the motion to dismiss stage and when doing so filters out the non-protectible elements of the works.  Here, all of the supposed "similarities" are merely non-protectible elements: general ideas, standard plot devices, or scenes-a-faire.  *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 207 (9th Cir. 1988) ("It is an axiom of copyright law that copyright protects only an author's expression of an idea, not the idea itself.").  Once those are filtered out, what remains are two works with dramatically different characters, dialog, illustrations,

10

setting, plot points, viewpoints, and messages.  In short, there is no meaningful similarity of *expression* at all between the works and Plaintiffs' claim fails.

The remainder of Plaintiffs' lawsuit comprises little more than personal attacks on Ms. Sanchez—claims of jealousy, revenge, resentment, mistreatment, and more. Those false allegations are irrelevant, but supplement the harassing nature of the multiple lawsuits and show that this lawsuit is a shakedown rather than a serious attempt to vindicate a legal right.  This frivolous Complaint should be dismissed.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff Has Not Spoken With Ms. Sanchez Since 2009

Plaintiff met Ms. Sanchez in or around 2006 and they knew each other until 2009, when they fell out following Ms. Sanchez's birthday party.  FAC ¶¶ 22, 32-35. Except for a brief interaction in 2019, Plaintiff does not allege *any* contact with Ms. Sanchez since 2009.  *Id.* ¶ 50.  While Plaintiff allegedly emailed Ms. Sanchez, she did not acknowledge or respond.  *Id.* ¶ 52

### B.     Plaintiff Published *Dharma Kitty Goes to Mars*

In 2013, Plaintiff made public a book concept of a girl going to space.  Request for Judicial Notice ("RJN") Ex. C ¶ 9 & Ex. E ¶ 49.  In December 2022, Plaintiff published *Dharma Kitty* allegedly based on that concept.  FAC at ¶¶ 52-54.  *Dharma Kitty's* general story is that an Indian girl named Pratya who owns a cat called Dharma does well in school and is invited to read the launch codes in a space shuttle, when her cat lets out a yawn that triggers a launch.  RJN Ex. B at 1-14.  The shuttle goes to space where Pratya and Dharma meditate before traveling to Mars, where they meet and talk to an alien.  *Id.* at 15-30.  Pratya and Dharma teleport back to earth while meditating with a large crystal in a cave and reunite with their family.  *Id.* at 36-41.

Plaintiff alleges that before she published *Dharma Kitty*, she emailed Ms. Sanchez's now-husband, Jeffrey Bezos, about her book and sought a "partnership

with Amazon," among other items.[1]  FAC ¶ 53.  There is no allegation Ms. Sanchez even was aware of that correspondence to Mr. Bezos.

### C.    Ms. Sanchez Published *The Fly Who Flew To Space*

In early 2023, Ms. Sanchez announced her intent to publish *The Fly*.  *Id.* ¶ 55. The book was published in September 2024.  *Id.* ¶¶ 55, 57.  The general premise of *The Fly* is that a fly named Flynn who lives in Texas near a space rocket launchpad is not good at school but is curious about space.  RJN Ex. A at 1-6.  One day he is exploring a rocket when a launch sequence is initiated and he travels to space, where he marvels at the earth and talks to the astronauts before returning home.  *Id.* at 7-29.

### D.    Plaintiff Previously Has Filed And Dismissed Two Lawsuits Asserting Ms. Sanchez Infringed On Her Copyright

In March 2024, before *The Fly* was even published, Plaintiff sent Ms. Sanchez a cease-and-desist letter threatening a copyright lawsuit based on Ms. Sanchez's announcement indicating the book's general premise.  FAC ¶ 81.  Ms. Sanchez denied the claims.  *Id.* ¶ 82.  On September 17, 2024, Plaintiff filed suit (the "First Action") in California Superior Court, County of Los Angeles, asserting claims for (1) intentional infliction of emotional distress, (2) theft of intellectual property, and (3) unlawful use of Plaintiff's intellectual property under *Desny v. Wilder*.  FAC ¶ 11; RJN Ex. C.  Eight days later, Plaintiff voluntarily and unilaterally dismissed the First Action.  RJN Ex. D.

On December 13, 2024, Plaintiff re-filed her claims in federal court (the "Second Action").  RJN Ex. E.  The complaint in that action alleged claims for (1) copyright infringement, (2) idea theft under *Desny,* (3) unfair business practices, and (4) unjust enrichment based on the premise Ms. Sanchez wrongfully used in her work "Plaintiff's original concept" of an animal traveling to space.  RJN Ex. E ¶¶ 21, 27. Counsel for Ms. Sanchez promptly contacted Plaintiff seeking to schedule a Rule 7-3

---

[1]    Mr. Bezos did not respond, his assistant did.  FAC ¶ 53.

conference, but Plaintiff stated she was unavailable to meet for more than three weeks until January 6, 2025.  RJN Ex. G at 3.  Shortly after that meet and confer, Plaintiff requested a stipulation to stay the action due to the Los Angeles wildfires.  *Id.*  Notwithstanding her request and the asserted reason for it, Plaintiff issued a third-party subpoena on January 7, 2025, and served it on January 9, 2025.  *Id.* at 4; *see also* RJN Ex. F.  When that stay request was refused, Plaintiff moved to stay the action.  RJN Ex. G.  Two days later, and before that motion could be adjudicated, Plaintiff dismissed the Second Action.  RJN Ex. H.  The Court approved the dismissal on January 16.  FAC ¶ 18; RJN Ex. I.

### E.    Plaintiff Files The Instant Case

Plaintiff brought this third action against Ms. Sanchez on June 18, 2025, this time adding Collective and Simon & Schuster as co-defendants.  *See* FAC.  Plaintiff initially asserted claims for (1) Copyright Infringement and (2) Breach of Contract, but later amended her pleading by dismissing her breach of contract claim.  *Compare* Complaint *with* FAC.

In the Notice of Related Cases, Plaintiff identifies the Second Action as a related matter arising from the same "transaction, happening or event" and involving "the same or similar questions of law and fact."  ECF No. 6 at 2.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Generally, a court accepts factual allegations as true and views them in the light most favorable to plaintiff.  *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee*

*v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  But a court is "not bound to accept as true a legal conclusion couched as a factual allegation" and will accept such a conclusion only where it is adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 664, 678.

## IV.    AZ I AM LACKS STANDING TO BRING A COPYRIGHT CLAIM

"Under copyright law, only copyright owners and exclusive licensees of copyright may enforce a copyright or a license."  *Sybersound Recs., Inc. v. UAV Corp.,* 517 F.3d 1137, 1144 (9th Cir. 2008) (citing 17 U.S.C. § 501(b)).

Plaintiff alleges only that "Defendants infringed *Zabel's* exclusive rights in *Dharma Kitty Goes To Mars* by copying, displaying, reproducing, publishing, distributing, and selling the copyrighted work and/or making derivative works derived therefrom without Zabel's permission."  FAC ¶ 90 (emphasis added).  Because Plaintiff has not pled that AZ I AM owns a copyright or is an exclusive licensee, AZ I AM does not have standing to bring this suit.  *Sybersound Recs.,* 517 F.3d at 1144 ("nonexclusive licensees cannot bring suit to enforce a copyright"); *TV One LLC v. BET Networks*, No. CV 11-08983 MMM (Ex), 2012 WL 13012674, at *3 (C.D. Cal. Apr. 2, 2012) (same).

Accordingly, AZ I AM must be dismissed from this action entirely.

## V.    PLAINTIFF ZABEL IS PRECLUDED FROM BRINGING THIS COMPLAINT UNDER THE TWO-DISMISSAL RULE

Plaintiff's claim is barred by Fed. Rule Civ. Proc 41(a)(1)(B) ("Rule 41"), which precludes a plaintiff from repeatedly re-filing dismissed claims.

### A.    This Is The Third Action Based On the "Same Transactional Nucleus of Facts."

Under Rule 41, "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.  Claims do not need to be identical to be the "same" under Rule 41, but are the "same" if they "could have been or [were] raised in the preceding action." *Rose Court*, 119 F.4th at 686.  "The key question in determining whether the

14

claims are the same 'is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Id.* Here, Plaintiff readily concedes that she previously filed and dismissed two actions that arose out of the very same "transactional nucleus of fact" as this action.

Plaintiff expressly pleads that she dismissed her First Action "in order to pursue her claim in federal court," which she did with the Second Action. FAC ¶ 13. That is borne out by the fact that the "theft of intellectual property claim" asserted in the First Action is materially identical to the Copyright Act claim in the Second Action—both claims sought damages for Ms. Sanchez's supposed theft of Zabel's *Dharma Kitty* work. *See* RJN Exs. C and E. Plaintiff later voluntarily and unilaterally filed a Notice of Dismissal of that Second Action. *Id.* Exs. H-I. While Plaintiff purported to dismiss the Second Action without prejudice, Rule 41 mandates that the dismissal "operate[d] as an adjudication on the merits" and was, therefore, dismissed **with prejudice**. *Rose Court*, 119 F.4th at 687-88 (where plaintiff voluntarily dismissed two prior actions, "the two-dismissal rule bars Rose Court from asserting this same claim for a third time against these defendants"); *Bala v. Bank of Am., N.A.*, No. CV 15-3305-MWF(JEMx), 2015 WL 4886043, at *5 (C.D. Cal. Aug. 14, 2015) (Rule 41 precluded plaintiffs from bringing the action because they already had twice filed and dismissed the same claims). Accordingly, Plaintiff could not bring a third action on the same claim.

Yet, Plaintiff's Notice of Related Cases in this action confirms that this is the third action arising out of the "same" claim because it arises out of the same "transaction, happening, or event" as that Second Action and involves "the same or similar questions of law and fact." ECF No. 6 at 2. Indeed, Plaintiff makes clear that all her actions arose out of the single cease-and-desist letter she sent in March 2024. FAC ¶ 81.

Plaintiff's actions fall squarely within the scope of Rule 41. Her claim against Ms. Sanchez is barred and it should be dismissed.

### B.    Plaintiff's Reliance on *Axon* Is Misplaced

Recognizing that Rule 41 bars her claims, Plaintiff attempts to plead around it by alleging she dismissed the Second Action due to personal circumstances and the need to retain counsel.  FAC ¶¶ 15-21.  Plaintiff cites as support *Axon Enter. Inc. v. Vievu LLC*, No. CV-17-01632-PHX-DLR, 2018 WL 317289, at *7 (D. Ariz., Jan. 5, 2018). *Id.*  That effort fails.

As a threshold issue, the law is settled that Rule 41 "does not consider the plaintiff's reasons for seeking a voluntarily dismissal." *Lake at Las Vegas,* 933 F.2d at 726-27.  The reasons why an action was voluntarily dismissed are irrelevant; all that matters is that it was dismissed.  Notably, the Ninth Circuit considering this rule in 2024 did not consider any such factors.  *Rose Court* 119 F.4th at 686 (looking only to the fact of the dismissals and ignoring the circumstances).  On the contrary, the Ninth Circuit clarified that "[t]here are four requirements that must be met to trigger the two-dismissal rule: (1) the plaintiff voluntarily dismissed an action in either state or federal court, (2) thereafter the plaintiff voluntarily dismissed a second action pending in *federal* court, (3) the two dismissals concerned the same claim, and (4) the plaintiff seeks to raise the twice-dismissed claim again in federal court." *Rose Court,* 119 F.4th at 685 (emphasis in original).  These requirements are clear and exclusive; Plaintiff's subjective motivation for the dismissals is irrelevant.  If *Axon* is not wrong as a matter of law, and it is because it is contrary to Rule 41 and *Lake at Las Vegas*, 933 F.2d at 726-27, it has been overruled by *Rose Court*.

Even assuming *arguendo* that it is proper to consider the motivations for dismissal of prior actions under Rule 41, the circumstances do not support a special exemption for Plaintiff.  Plaintiff voluntarily dismissed the First Action because she filed in state court claims that should have been filed in federal court.  FAC ¶¶ 12-13; RJN Ex. D.  That Plaintiff made a mistake with her filing is of no significance because such errors are "typical of the type of error motivating voluntary dismissals under Rule 41(a)(1)." *Lake at Las Vegas*, 933 F.2d at 728 (Rule 41 applied even though

16

1  plaintiff's first action was wrongfully filed in state court).

2      As to the Second Action, while Plaintiff claims she dismissed it because she
3  was unable to prosecute her claims and meet deadlines due to wildfires, the facts show
4  that not to be true.  FAC ¶¶ 14-16.  In early January 2025 the only deadline was
5  Plaintiff's deadline to serve Ms. Sanchez.  Accordingly, *there was no time pressure
6  on Plaintiff to do anything*.  And while Plaintiff claims she was unable to act due to
7  wildfires, those wildfires did not prevent Plaintiff from having issued and then served
8  a third-party subpoena on January 7-9, 2025.  RJN Ex. F; *see also id.* Ex. G at 4.  If
9  Plaintiff needed more time for any reason, she was free to move for a stay *which is
10  exactly what she did*.  *Id.*  Ex. G.  Rather than waiting for that motion to be adjudicated,
11  however, she voluntarily decided to dismiss her case instead.  *Id.* Exs. H-I.  Having
12  voluntarily made that decision, she cannot now complain about its consequences.

13      Finally, the fact that Plaintiff was acting *pro se* is irrelevant.  "[P]ro se litigants
14  must follow the same rules of procedure that govern other litigants."  *King v. Atiyeh*,
15  814 F.2d 565, 567 (9th Cir. 1987).  Courts routinely dismiss under Rule 41 cases
16  brought by self-represented litigants, and the Ninth Circuit affirmed such a dismissal
17  just three months before this motion was filed.  *Wood v. SGT Inv.,* No. 23-15939,
18  2025 WL 1248417, at *1 (9th Cir. 2025) (affirming dismissal of *pro se* plaintiffs'
19  claims under Rule 41); *see also Marin v. Marshall,* No.: 23-cv-336-RSH-BLM, 2025
20  WL 1082745, at *8 (S.D. Cal. Apr. 10, 2025) (approving of earlier dismissal of
21  Defendant Wells Fargo from a case brought by a *pro se* plaintiff under Rule 41);
22  *Calihan v. Cate,* No. 2:12-cv-2937-MCE-EFB P., 2015 WL 814027, at *6 (E.D. Cal.
23  Feb. 25, 2015) (dismissing a case by *pro se* state prisoner brought against the Attorney
24  General of California under Rule 41); *In re Camacho,* 489 B.R. 837, 843 (E.D. Cal.
25  Mar. 18, 2013) (dismissing case brought by a *pro se* litigant against multiple financial
26  institutions under Rule 41).

27

28

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

### C.    Rule 41 Also Precludes A Copyright Claim Against Collective And Simon & Schuster

Rule 41 operates not by merely prohibiting the filing of a third claim, but by deeming the dismissal of the Second Action to have been an "adjudication on the merits."  As a consequence of its operation in this manner, Rule 41 is analyzed under *res judicata* principles.  *Rose Court,* 119 F.4th at 686 ("[W]e use a transactional test for res judicata.  And like our sister circuits, we now adopt this same transactional approach for purposes of the two-dismissal rule.') (citing *Jian Yang Lin v. Shanghai City Corp*, 950 F.3d 46, 50 (2d Cir. 2020) (analogizing the two-dismissal rule to the doctrine of res judicata).

The effect of this is that Rule 41 prohibits plaintiff from filing the same claim against not only the *same* defendant previously sued, but also "a defendant who was not previously named if that defendant is 'substantially the same as the defendant dismissed.'" *Rose Court,* 119 F.4th at 688.  Here, those principles bar Plaintiff's claim against Collective and Simon & Schuster because the copyright claim that is asserted against them and Ms. Sanchez already has been "adjudicat[ed] on its merits."

In *Rose Court*, for example, the plaintiff's alleged grievance was that a promissory note had not been validly transferred and that defendants could not foreclose upon it.  One defendant, U.S. Bank, had not been named as a defendant in the prior action, although its agent SPS had been.  *Id.* at 688.  The Ninth Circuit held "[n]onetheless, the two-dismissal rule bars Rose Court's repeat fraud-based claim against this defendant as well" because it was "substantially the same as the defendant dismissed." *Id.*  The fact that it was not named was immaterial for the analysis – "SPS and U.S. Bank [we]re closely connected based on their agency relationship with respect to the loan, and the allegations against SPS implicated U.S. Bank's interests." *Id.*  As a result, "U.S. Bank was 'substantially the same' as SPS in the context of the" prior dismissed action and Rule 41 operated to bar the claims against it too.  *Id. See also Lake at Las Vegas*, 933 F.2d at 728 (dismissing under Rule 41 claims against a

party not named in prior dismissed action where the party was "substantially the same" as the named defendant and the same claims and rights were implicated).

As in *Rose Court*, so too here. Collective and Simon & Schuster have always been involved in this action because Plaintiff has named them as wrongdoers since at least her March 2024 cease-and-desist letter.[2] Although the First and Second Actions were asserted against Ms. Sanchez only, the purported liabilities of Collective and Simon & Schuster are entirely dependent upon establishing liability on the part of Ms. Sanchez because they would merely be her agents under any successful theory by the Plaintiff. A determination on the merits that Ms. Sanchez had not engaged in copyright infringement *necessarily* would preclude a finding that her agents could have engaged in copyright infringement.

Dismissing the action against Collective and Simon & Schuster also would further Rule 41's anti-harassment goals. Plaintiffs' success against Collective and Simon & Schuster is dependent upon proving Ms. Sanchez engaged in copyright infringement. Allowing the claim to proceed against them would, therefore, operate as an end-run around Rule 41—Ms. Sanchez would be dragged back into a case she should not have to defend because it has been dismissed against her on the merits. And allowing Plaintiff to avoid the consequences of Rule 41 merely by adding a new defendant, that does not change the scope of the case, would merely re-open the doors to harassing litigation that Rule 41 was meant to close. *Rose Court,* 119 F.4th at 687 (Rule 41 was intended to "limit[] a plaintiff's right to repeatedly dismiss the same claims to the detriment of the defendant and the court's docket.").

This Court should not allow Plaintiff to propagate her harassing conduct against Ms. Sanchez, Collective, and Simon & Schuster, and should dismiss the claims against them all pursuant to Rule 41.

---

[2]  Plaintiff also subpoenaed Collective in the Second Action.  RJN Ex. F.

## VI.    PLAINTIFF FAILS TO PLEAD A COPYRIGHT CLAIM

To state a claim for copyright infringement, Plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.,* 499 U.S. 340, 361 (1991). "Copying" requires not only access to the copyrighted work, but also "that the works at issue are ***substantially similar*** in their protected elements." *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822 (9th Cir. 2002) (emphasis added).

### A.    Lack of Substantial Similarity Is Ripe At Motion To Dismiss Stage

A court may grant a motion to dismiss at the pleading stage if, upon "examination and comparison," it concludes that no reasonable jury could find substantial similarity. *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Carlini v. Paramount Pictures Corp.,* No. 21-55213, 2022 WL 614044, at *1 (9th Cir. Mar. 2, 2022) (a court should dismiss a copyright claim pursuant to Rule 12(b)(6) if "[a]fter a careful review of the two works" it "conclude[s] they are not substantially similar as a matter of law"); *Masterson v. Walt Disney Co.,* 821 Fed. App'x. 779, 780-81 (9th Cir. 2020) (noting Ninth Circuit has repeatedly affirmed "dismissal of a case alleging infringement of a literary work on substantial similarity grounds before discovery has been conducted").

#### 1.    Courts Must Consider The Actual Works

In assessing substantial similarity at the motion to dismiss stage, courts consider the actual works at issue when there is no reasonable dispute about their authenticity. *See, e.g., Basile v. Warner Bros. Ent., Inc.*, No. CV 15-5243-DMG (MRWx), 2016 WL 5867432, at *1–2 (C.D. Cal. Jan. 4, 2016) (considering DVDs of *The Dark Knight Rises* and *Jupiter Ascending* in evaluating a motion to dismiss a complaint alleging that both films infringed copyrights); *Zella v. E.W. Scripps Co.,* 529 F. Supp. 2d 1124, 1128 (N.D. Cal. 2007) (comparing plaintiff's written treatment of a cooking show to actual episodes of *Rachael Ray*). Here, there is no dispute as to the authenticity of the actual works and copies have been lodged with this motion.

20

2.    <u>Courts Must Filter Out Non-Protectible Elements</u>

When evaluating substantial similarity, a court "must take care to inquire only whether 'the protectible elements, standing alone, are substantially similar.'" *Cavalier*, 297 F.3d at 822 (citation omitted).  Accordingly, "a court must filter out and disregard the non-protectible elements." *Id.*

The category of non-protectible elements is significant.   Ideas are non-protectible because "[i]t is an axiom of copyright law that copyright protects only an author's expression of an idea, not the idea itself." *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 207 (9th Cir. 1988).  As a necessary consequence, "similarities derived from the use of common ideas cannot be protected; otherwise, the first to come up with an idea will corner the market." *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).

For example, in *Berkic v. Crichton*, the Ninth Circuit found there was no substantial similarity where both works shared a common premise of "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants."  761 F.2d 1289, 1293 (9th Cir. 1985).  Similarly, in *Benay v. Warner Bros. Entertainment* the court filtered out "a scene of the protagonist sailing into Japan, scenes in the Imperial Palace, scenes on the Imperial Army's training grounds, and battle scenes in various places in Japan" that appeared in both works because "both works involve an American war veteran who travels to Japan to help the Emperor fight a samurai rebellion."  607 F.3d 620, 627–28 (9th Cir. 2010), *overruled on other grounds in Skidmore v. Led Zeppelin,* 952 F.3d 1051 (9th Cir. 2020).  And the court in *Williams v. Crichton* found no substantial similarity as a matter of law after filtering out the common elements of electrified fences, automated tours, dinosaur nurseries, and uniformed workers because they each merely "flow[ed] from the uncopyrightable concept of a dinosaur zoo" that was a non-protectible idea.  84 F.3d 581, 589 (2d Cir. 1996).

///

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

Finally, generic and familiar stock scenes and themes that are staples of literature are also not protected. The "situations and incidents that flow necessarily or naturally from a basic plot premise or generic plot line" and "familiar stock scenes and themes that are staples of literature" are filtered out of the substantial similarity analysis. *Corbello v. Valli,* 974 F.3d 965, 975 (9th Cir. 2020) (cleaned up) (citing *Benay,* 607 at 624-25). In *Corbello*, for example, the "idea that [band] members performing together after many years apart would evoke the feeling of a time machine flows naturally from the plot premise of a band reuniting and is classic *scenes-a-faire*." *Id.* at 978 (emphasis in original). Similarly, in *Berkic*, the court filtered out "depictions of the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other" because such "familiar scenes and themes are among the very staples of modern American literature and film." 761 F.2d at 1294. And the court in *Cavalier* filtered out "a child riding a dragon, glowing badges, star trees, checklists, and schools in the sky" because, although they could be protected if the depictions and/or descriptions of each were similar, "these elements are not protectible as abstract ideas" and are scenes-a-faire. 297 F.3d at 828.

In stark contrast, protectible elements are narrow. They are limited to only "the specific details of an author's rendering of ideas" (*Metcalf v. Bochco,* 294 F.3d 1069, 1074 (9th Cir. 2002)) and "the actual concrete elements that make up the total sequence of events and the relationships between the major characters" (*Berkic,* 761 F.2d at 1293). *See also Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir. 1994) (copyright law protects only the "articulable similarities" based on "specific expressive elements").

Plaintiff fails to show any substantial similarity between the protectible elements of the Works.

**B.    The Works Are Not Substantially Similar**

Plaintiff asserts that Ms. Sanchez "copied content, subject matter, plot points,

22

scenes and story arcs of" Plaintiff's book and that her claim arises out of "her selection of scenes and plot points she used for telling her story as well as the order she chose to present those scenes and plot points to create her story." FAC ¶¶ 60-63. In support of that broad allegation, she sets forth a table that she states "illustrates many of the similarities between the two books." *Id.* ¶ 61. But as set forth in detail below, that table identifies nothing more than general plot ideas, scenes-a-faire, and the necessary or natural sequence of events flowing from the common premise of an unexpected space flight, *none of which are protectible. Berkic,* 761 F.2d at 1293; *Cavalier,* 297 F.3d at 824. Once those non-protectible elements are filtered from the Works, as they must be, and only the specific expressive elements are left, it is clear that they are profoundly different and not at all "substantially similar."

1.    Plaintiff's Table Does Not Show Substantial Similarity

**Introductory Elements Are Non-Protectible** – Plaintiff notes that both Works begin by introducing the main character and its family, identifying the geographic location, and showing the main character attending school and a math class. FAC ¶ 61 (12:24-13:4). This is a generic and non-protectible introduction for books involving school-age characters. When the *actual expression* of these generic elements is examined, as it must be, these elements are *expressed radically differently.* Whereas *Dharma Kitty* depicts Pratya in multiple scenes involving science labs, beakers, and a test, *The Fly* depicts Flynn as confused in a math class—an entirely different narrative. *Compare* RJN Ex. A at 1-4 *with* Ex. B at 1-10.

**Expressions of Need to Focus and Interest In Space Travel Are Non-Protectible** – Plaintiff alleges that in both Works there is "expression of the need to focus at school" and "of interest in space travel." FAC. ¶ 61 (13:5-7). Again, those concepts are so generic that they are non-protectible absent a similar *expression* of those ideas. *Rice v. Fox Broadcasting Co.,* 330 F.3d 1170, 1174 (9th Cir. 2003), *overruled on other grounds by Skidmore,* 952 F. 3d 1051 (9th Cir. 2020) ("[W]e note at the outset that ideas generally do not receive protection, only the *expression* of such

23

ideas do) (emphasis in original).  Again, the expression of these concepts is dissimilar. In *Dharma Kitty,* Pratya says "I really have to focus today, Dharma Kitty… If I pass my exam with all A's, my professor will let me read the space shuttle's launching code!"  RJN Ex. B at 9.  The subsequent pages depict Pratya hard at work in school, noting that she "studied, researched, and studied some more!" before getting a "perfect score" on her exam.  *Id.* at 9-11.  In contrast, Flynn expresses in *The Fly* that he struggles to focus on school but dreams of becoming an astronaut.  RJN Ex. A at 3-5.

**Protagonists Having "Regular Activities" Is Non-Protectible** – Plaintiff then broadly alleges that each book "identifies character's regular activities."  FAC ¶ 61 (13:8).  That is not protectible absent a similar *expression* and the expressions are vastly different:  while *The Fly* shows Flynn going to "hang out at the stables with the horses," there is no comparable scene in *Dharma Kitty* at all, let alone one that contains similar expression.[3]  RJN Ex. A at 6.

**Elements of Unexpected Space Flight Are Non-Protectible** – Plaintiff then alleges numerous purported similarities which are non-protectible because they flow naturally from the shared premise of unplanned space travel and the expression is, again, dissimilar.  FAC ¶ 61 (13:9-17).  For example, each character allegedly "visits…a launch control room," but Plaintiff herself notes that only Flynn goes into one while Pratya merely walks past one.  FAC ¶ 61 (13:9-10); RJN Ex. A at 7; RJN Ex. B at 12.  Similarly, there is nothing original or protectible about protagonists of a space story going into the crew capsule of a rocket that will take them to space but, again, the expressions are dissimilar.  FAC ¶ 61 (13:11).  Flynn's "rocket" is stored in a barn, while Pratya and Dharma Kitty's "space shuttle" is in a high-tech launch

---

[3]  The Court need not and should not rely on Plaintiff's allegations alone. *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 51 (2d Cir. 1986) ("[T]he works themselves, not descriptions or impressions of them, are the real test for claims of infringement.").

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

facility.  *Id.*; RJN Ex. A at 8; RJN Ex. B at 12.  And while Flynn trespasses into a space capsule while "peeking" into it, Pratya and Dharma Kitty are invited into it.  FAC ¶ 61 (13:12); RJN Ex. A at 9-10; RJN Ex. B at 12-13.  While Flynn's rocket is a deliberate launch that occurs while he happens to be in the crew capsule, Pratya's rocket is apparently thrust into space because of her cat's "screeching yawn."  RJN Ex. A at 11; RJN Ex. B at 14-15.  Such differences in key plot points are significant and demonstrate an absence of substantial similarity.  *See, e.g., Silas v. Home Box Office, Inc.,* 201 F. Supp. 3d 1158, 1184 (C.D. Cal. Aug. 17, 2016) ("a football player who dies of a cocaine overdose" and the "death of a football player who dies in a car crash" were among the "significant differences" in a comparison of television episodes).  Finally, Plaintiff cites standard elements such as the capsule doors closing, loud noises, flashing lights, the character being unable to exit, crying for help, and looking out the window.[4]  FAC ¶ 61 (13:15-17).  Such things are common to all rocket launches and are, therefore, non-protectible.  Indeed, "to recognize copyright protection in their combination effectively would give [Plaintiff] a monopoly" on the accurate description of a rocket launch.  *Satava v. Lowry,* 323 F.3d 805, 812 (9th Cir. 2003).

**Scenes In Space Are Neither Protectible Nor Similar** – Scenes of a "rocket airborne" with a character "looking out the window" and space "seen from a rocket" (FAC (13:18-22)) are stock depictions in both non-fiction and fictional space stories.  These elements are "indispensable, or at least standard, in the treatment of a given idea" so "they are treated like ideas and therefore not protected by copyright."  *Apple Comput., Inc.*, 35 F.3d at 1444 (internal quotations omitted).  While Plaintiff also notes that both books comment on the vastness of space, she concedes the expression

---

[4]    Plaintiff identifies images from the Works where this narrative occurs that she contends are similar.  FAC ¶ 67.  But, again, the expressions are entirely different and the only commonality is the non-protectible word "Help!".  *Id.*

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

is *different*.  FAC ¶ 61 (13:23-24).  Whereas the third-person narrator in *Dharma Kitty* teaches the reader about the ***silence*** in space (RJN Ex. B at 20), Flynn illustrates and comments on the utter ***darkness*** of space (RJN Ex. A at 17).  And while Flynn stays in orbit around earth, Pratya and Dharma Kitty travel to Mars.  *Compare* RJN Ex. A at 13-22 *with* RJN Ex. B at 23-25.

**Plaintiff Cannot Own The Plot Point Of Characters Interacting** – Nowhere is Plaintiff's attempted overreach demonstrated more clearly than in her attempt to claim a protectible interest in characters having an "interaction with travel companion."  FAC ¶ 61 (13:25-14:4).  The overwhelming majority of all books ever published have character interactions—Plaintiff does not own that plot point.  And yet again, a cursory review of the books uncovers the difference in the expression: *The Fly* brings the reader through various sites across Earth—from the Statue of Liberty and the Grand Canyon to the Eiffel Tower; the Amazon rainforest and the Taj Majal; the Great Pyramids of Giza and the Sahara Desert; Mount Everest and the Great Barrier Reef in Australia and then learns from an astronaut about gravity and Earth's atmosphere.  *See* RJN Ex. A at 13-22.  Meanwhile, Pratya meets an alien on Mars, explores an underground Martian cave featuring a crystal Stonehenge, and meditates with many aliens and a crystal.  FAC ¶ 61 (14:4-5); RJN Ex. B at 26-37. These scenes are starkly different.  *See Benay,* 607 F.3d at 628 (no substantial similarity where the "the pacing of the two works is substantially different," with one work that "jumps from battle scene to battle scene" and another that has a "long period of relative calm" where a character is held in one location).

**Children's Book Characters Returning To Earth Is Non-Protectible** – Finally, Plaintiff alleges that both characters return to earth, hug their families, "receiv[e] an award for going to space," and reflect on their experience.[5]  FAC ¶ 61

---

[5]    Plaintiff suggests that the illustrations depicting these narrative developments are the same.  FAC ¶¶ 68-69.  Again, the expressions are different; the only commonality

(14:6-14).  But those narrative devices are common for children's books.  *See, e.g.,*
*Cavalier,* 297 F.3d at 828 ("The themes of teaching children to have confidence, to
overcome their fears, and to try are not only too general to be protected but are also
standard topics in children's literature").  The respective returns to earth are highly
dissimilar—whereas Flynn returns in a planned landing, Pratya returns by teleporting
when Dharma Kitty yawns while they are meditating with a pink crystal among aliens.
RJN Ex. A at 22-23; RJN Ex. B at 35-38.  As for the similarity in receiving an award,
the books diverge meaningfully in their expression: Pratya is publicly honored with a
ceremonial key to her city in India, while Flynn is privately given a pin by one of the
astronauts aboard his flight as a symbolic gesture marking his inclusion among the
crew.  RJN Ex. B at 40; RJN Ex. A at 28.

### 2.    Plaintiff Cannot Own The Phrase "I Am Focused"

Plaintiff further alleges Ms. Sanchez intentionally incorporated a *Dharma Kitty*
"catch phrase" into her book by having her fly character declare, "I am focused." FAC
¶¶ 75-76.  Plaintiff does not and cannot have copyright ownership of that phrase
because it is ubiquitous.  A three-word sentence in a children's book that sets forth a
core concept of intellectual development is non-protectible and must be filtered out.
*Cavalier,* 297 F.3d at 828; *Narell v. Freeman,* 872 F.2d 907, 911 (9th Cir. 1989)
("Phrases and expressions conveying an idea typically expressed in a limited number
of stereotyped fashions are not subject to copyright protection."); *Apps v. Universal
Music Grp., Inc.,* 763 Fed.App'x 599, 600 (9th Cir. 2019) (the lyric "I need to know
now" is not protectible).  For a plaintiff to demonstrate substantial similarity of dialog
it must show "extended similarity of dialog."  *Olson v. National Broad. Co., Inc.,* 855
F. 2d 1446, 1450 (9th Cir. 1988).  Plaintiff has not done so and cannot do so.

---

is the unprotectable concepts of reuniting with family and receiving an object.  *Id.*

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

3.    <u>Plaintiff Does Not Show Infringement Of A Rocket Design</u>

Finally, Plaintiff alleges that "on information and belief, Sanchez also gave her main character a rocket logo on the shirt it wore to space to mimic the rocket logo Zabel's main character wore on the space suit she wore while in space." FAC ¶ 77.


The rocket as it appears on Pratya in *Dharma Kitty*.


The rocket as it appears on Flynn in *The Fly*.

*First*, the idea of a rocket on an outfit worn by the protagonist of a space story is not protectible. *Satava*, 323 F.3d at 810 ("[E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law"). *Second*, the notion that one mimics the other is belied by the fact that the rocket designs are dissimilar. *Dharma Kitty* has a subtle, monochromatic, torpedo-like outline as a stylized I within an "AZIAM" logo. Flynn has a colorful cartoon illustration of a rocket blasting off. The expressions are not substantially similar, but dramatically different.

If the law recognized these non-protectible elements and generalized "expression" as Plaintiff hopes, it would imperil all works built around shared ideas of animals, exploration, and space travel. But it does not—the law protects only articulable expression, which Plaintiff does not allege is at issue—so this lawsuit cannot survive the pleading stage.

**C.    The Works Are Not Otherwise Similar**

In a last gasp attempt to assert a copyright claim, Plaintiff argues that the overall plots of the Works are the same. FAC ¶ 66. In support of that contention, she

28

highlights certain narrative choices made in a broad "sampling of children's books regarding an animal traveling to space, reveals a broad array of choice in plot points and storylines," including "the ways animals get to space, what the animals do prior to going to space, how animals get access to a space vehicle, the reasons for going to space, how the launch occurs, existence of and types of interactions while in space, how other characters react upon return, what the animal itself does upon return." *Id.* ¶ 65. Notably, and as set out in detail above, *Dharma Kitty* and *The Fly* vary markedly in all of the potential narrative choices Plaintiff identifies.

More generally, the Works are not similar other than the fact that they are both children's books that involve a spontaneous trip to space. To highlight just a few: *Dharma Kitty* is told in the third person, whereas *The Fly* is narrated in the first person. *Dharma Kitty* begins in an Indian city, but *The Fly* begins in West Texas. Pratya and Dharma Kitty journey alone, but Flynn travels with a supportive crew. Pratya and Dharma Kitty travels "to Mars," but Flynn orbits Earth and explores various landmarks. Pratya and Dharma Kitty travel to and from Mars in a mystical way and meet Martians; Flynn travels to and from space in a typical manner alongside human astronauts. *The Fly* teaches readers real things about space, but *Dharma Kitty* makes no such effort. Fundamentally, *Dharma Kitty* "teaches children to control their reactions and manage their anxieties," FAC ¶ 42, but *The Fly* is about curiosity, RJN Ex. A at 29 ("Now I realize, it's ok to daydream and wander a little…You never know where your dreams will take you!").

### D. The Remaining Allegations Highlight The Absence Of Merit

In a recognition that her copyright claim has no merit, Plaintiff attacks Ms. Sanchez with irrelevant allegations that she is jealous of Plaintiff, "harbor[s] resentment towards," and is out "to exact revenge" or is "trolling" Plaintiff. FAC ¶¶ 33-36, 72-73, 78-80. Those allegations are irrelevant to a copyright infringement analysis, but are clearly intended to color this Court against Ms. Sanchez in the hope that it will think there is no smoke without fire. This Court should disregard them.

### E.    The Court Should Dismiss The Copyright Claim With Prejudice

To the extent anything remains of the Works after filtering out the non-protectible elements of Plaintiff's work, there are no substantial similarities. Accordingly, Plaintiff cannot sustain a copyright claim. Because discovery would not make the works similar, dismissal with prejudice is proper. *See Rentmeester v. Nike, Inc.,* 883 F.3d 1111, 1125 (9th Cir. 2018) (affirming dismissal with prejudice when "amending the complaint would have been futile"), *overruled on other grounds by Skidmore,* 952 F. 3d 1051 (9th Cir. 2020).

## VII.  CONCLUSION

For the foregoing reasons, this Court should dismiss the entire FAC with prejudice.

DATED:  August 6, 2025            Terry W. Bird
                                  Oliver Rocos
                                  Sarah P. Guinee
                                  Bird, Marella, Rhow,
                                  Lincenberg, Drooks & Nessim, LLP


By: _____
              Oliver Rocos
      Attorneys for Defendant Lauren Sanchez

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this

brief contains 6,851 words, which complies with the word limit of L.R. 11-6.1.

DATED:  August 6, 2025

By: _____
                                   Oliver Rocos

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES