Rustin K. Mangum (SBN 280109)
rustin@mangumririe.com
**MANGUM RIRIE LLP**
999 Corporate Dr., Suite 255
Ladera Ranch, CA 92694
Tel: (949) 699-2499

**Attorney for Plaintiffs**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| Alanna Zabel, et al., | ) Case No. 2:25-cv-05558 MEMF (Ex) |
|---|---|
| Plaintiff, | ) Assigned to: <br> ) Hon. Maame Ewusi-Mensah Frimpong |
| vs. | ) **PLAINTIFF'S OPPOSITION TO** |
| Lauren Sanchez, et al. | ) **DEFENDANTS' MOTION TO** <br> ) **DISMISS** |
| Defendants. | ) <br> ) [Filed Concurrently with [Proposed] Order] <br> ) <br> ) Hearing: <br> ) Date:     October 2, 2025 <br> ) Time:    10:00 a.m. <br> ) Place:   350 W. 1st Street <br> )              Courtroom 8B, 8th Floor <br> )              Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

I. FACTUAL BACKGROUND ........................................................................... 1

II. RULE 41 DOES NOT BAR PLAINTIFF'S CLAIM ....................................... 4

    A. Second Dismissal Was Not "Voluntary" under Rule 41    4

    B. Prior Dismissal is a "Limited Circumstance" Outside Rule 41    6

III. PLAINTIFF PLEADS A VALID COPYRIGHT CLAIM ............................. 10

    A. The Allegations Support the Potential for Direct Evidence    10

    B. Substantial Similarity    11

IV. CONCLUSION .............................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Axon Enterprise Inc. v. Vievu LLC*,
   No. CV-17-01632-PHX-DLR, 2018 U.S. Dist. LEXIS 2992  (D. Ariz. Jan. 5, 2018)……………………………………………………...4, 6, 8-9, 14

*Broderbund Software, Inc. v. Unison World, Inc.*,
   648 F.Supp. 1127 (N.D. Cal. 1986)..……………………………………10

*Cavalier v. Random House, Inc.*,
   297 F.3d 815, 822 (9th Cir. 2002).………………………………………10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340, 346 (1991).……………………………………………….10

*L.A. Printex Industries, Inc. v. Aeropostale, Inc.*,
   676 F.3d 841, 848 (9th Cir. 2012).………………………………………12

*Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*,
   933 F.2d 724, (9th Cir. 1991)……………………………………………4-6, 9, 14

*Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*,
   534 F.2d 1012 (2d Cir. 1976)…………………………………………….8

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018)…………………………………………...10, 12-15

*Rose Court, LLC v. Select Portfolio Serv., Inc.*,
   119 F.4th 679 (9th Cir. 2024)…………………………………………………9

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990).……………………………………………10, 12

**Other Authorities**

Federal Rules of Civil Procedue 41……………………………………………….4

California Code of Civil Procedure § 425.16(b)(1).……………..……………….5

Plaintiff Alanna Zabel ("Plaintiff" or "Zabel")[1] hereby opposes Defendants' Motion to Dismiss (Dkt. 18) filed by Lauren Sanchez ("Defendant" or "Sanchez"), The Collective Book Studio LLC ("Collective"), and Defendant Simon & Schuster LLC ("Simon & Schuster") (collectively, "Defendants").

## I.   FACTUAL BACKGROUND

Zabel first filed a claim alleging copyright infringement against Sanchez in California state court on September 17, 2024. Dkt. 18-4. She filed as a pro se litigant. Acting on her own behalf and without legal education, she did not understand the nuances between state and federal courts nor the varying jurisdiction between the two. Exh. A, Declaration of Alanna Zabel ("Zabel Decl."), ¶¶2-3, 6-8. To her, it was a simple issue: she had a valid claim, so she filed a lawsuit to resolve it.

Shortly after filing, an attorney who was aware of Zabel's filing, and seemingly wanting to help her, informed Zabel that her copyright claim cannot be presented in state court. *Id.*, ¶7. Due to her limited procedural understanding, this reality was new to her. *Id.* This attorney informed her that she could simply dismiss the state court claim and refile in federal court. *Id.*

Before any further action was taken, Zabel filed to dismiss the state court claim on September 25, just eight days after the case was filed, to pursue her claim in federal court. Dkt. 18-5. That same day, her claim was dismissed without prejudice. *Id.* Zabel now needed to figure out how to get her claim filed in federal court.

---

[1] Plaintiff agrees that AZ I AM, Inc. should be dismissed. AZ I AM was a proper plaintiff to the original complaint but should have been removed with the First Amended Complaint when the breach of contract claim was removed.

     Still proceeding as a pro se litigant, Zabel manually filed her claim for copyright infringement in the Central District of California on December 13, 2024, which the court entered on December 17. Dkt. 18-6. Before Zabel had an opportunity to serve the complaint (or even access the filed complaint), Defendant contacted her on December 18 to request a meet and confer on unspecified grounds. Dkt. 18-8 at 3 (¶1); Exh. A (Zabel Decl.), ¶¶19, 23 and Exh. 2 (email exchange). Due to Plaintiff's holiday plans, she was not available until January 6, which she offered to Defendant. *Id.* Due to scheduling conflicts of both parties, the meeting ended up occurring on January 9. Dkt. 18-8 at 3 (¶¶2-3); Exh. A (Zabel Decl.), ¶¶19, 22 and Exh. 1. During the meet and confer, Sanchez (through counsel) informed Zabel (pro se) that she would be filing a motion to dismiss Zabel's copyright claim including an anti-SLAPP motion to strike her remaining claims and seeking attorneys' fees. Exh. A (Zabel Decl.), ¶¶15, 22 and Exh. 1; Dkt. 18-8 at 5 (top). Essentially, Sanchez's position was that Zabel's case lacked merit, there were no similarities between the two books, and Zabel would have to pay Sanchez's attorneys' fees if Zabel did not dismiss her case. This was a lot for a pro se litigant to process—particularly considering the circumstances of life in Los Angeles County at this time.

     Two days prior to the meet and confer, severe wildfires began sweeping through parts of Southern California, and Los Angeles County entered a proclaimed state of emergency. Even before the meet and confer, Zabel received an evacuation notice, which led to her evacuating her home and seeking a place to live. Dkt. 18-8 at 3 (last ¶), Exh. A (Zabel Decl.), ¶19. But her evacuation was not the only fire-related factor adding stress to Zabel's life. Zabel had previously volunteered at a trauma clinic in Pacific Palisades, and that trauma center entirely burned down in

the fires. Exh. A (Zabel Decl.), ¶¶11, 19-20; Dkt. 18-8 at 2 (¶3). Zabel was actively assisting those affected by this loss. *Id.* Zabel also worked as a mindfulness instructor at a local school where six of the children in her class lost their homes in the Pacific Palisades fire. Exh. A (Zabel Decl.), ¶¶12, 19; Dkt. 18-8 at 2 (¶3). Understandably, Zabel felt a disruptive and exhausting sense of being displaced and on alert. *See* Exh. A (Zabel Decl.), ¶¶11-13.

Overwhelmed by the stress and demands of this state of emergency, Zabel struggled to also meet the demands of her litigation, which as a pro se litigant included a steep learning curve regarding what to do and how to do it. At a time when she was needing to deal with the state of emergency and figure out her living situation, Zabel reached out to Sanchez and, citing her difficulties brought on by the state of emergency, asked for a two- to three-week stay to the litigation. Exh. A (Zabel Decl.), ¶¶14, 19; Dkt. 18-8 at 10 (email request). But Sanchez refused. *Id.* With a pro se litigant struggling in the California wildfires, Sanchez would not stipulate to even a short delay of time. In early stages of litigation, short delays are routinely requested and granted—even for matters of simple convenience. But not here—not even for a state of emergency.

Contending with the demands of the LA fires, Zabel struggled to figure out how she could keep up with the demands of the litigation. Due to the fires and the pressure from the opposing side, Zabel realized that she needed to find counsel to represent her in her claims against Sanchez. Exh. A (Zabel Decl.), ¶18. Zabel notified Sanchez of her intent to dismiss and refile the claim after she obtained counsel. *Id.*, ¶¶18, 21. Zabel filed a request for dismissal, which the court approved on January 16. Dkt. 18-10.

On June 18, Zabel filed the current action. On July 2, Zabel filed a First Amended Complaint ("Complaint") after meeting and conferring with Defendants regarding an alleged (though frivolous) anti-SLAPP motion regarding the breach of contract claim. To avoid the delay of anti-SLAPP jurisprudence, including a likely interlocutory appeal, Plaintiff decided to amend and proceed with only the copyright infringement claim.

## II. RULE 41 DOES NOT BAR PLAINTIFF'S CLAIM

Defendants argue that the dismissal of Zabel's prior Federal Court case was a dismissal on the merits due to Fed. R. Civ. P. 41(a)(1)(B). This "two-dismissal rule" is triggered only by a "voluntary dismissal." *See* Fed. R. Civ. P. 41(a) (captioned "Voluntary Dismissal"). And even when dismissals are found to be voluntary, "the Ninth Circuit has recognized that 'in certain limited circumstances, [Rule 41] will not be literally applied.'" *Axon Enterprise Inc. v. Vievu LLC*, No. CV-17-01632-PHX-DLR, 2018 U.S. Dist. LEXIS 2992, at *15 (D. Ariz. Jan. 5, 2018) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 727 (9th Cir. 1991)). Other courts have reached similar holdings. *E.g.*, *Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1017 (2d Cir. 1976) ("Where the purpose behind the 'two dismissal' exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful not to construe or apply the exception too broadly.").

### A. Second Dismissal Was Not "Voluntary" under Rule 41

In *Lake at Las Vegas Invs. Grp., Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724 (9th Cir. 1991), on which Defendants rely heavily, the court discussed what

constitutes a voluntary dismissal for purposes of Rule 41. Borrowing from the D.C. Circuit, the court stated it "means that the party is filing the dismissal without being compelled by another party or the court." *Id.* at 726. Thus, when another party compels a litigant to dismiss a case, the rule does not have effect. Such is the case here.

Regarding the prior federal case, Defendants acknowledge requesting and holding a meet and confer with Zabel shortly after the case was initiated. Dkt. 18 (Motion) at 12-13 (§ II.D.). But Defendants fail to mention the purpose or substance of that meet and confer. As confirmed by a follow-up email from counsel, counsel for Sanchez alleged grounds for filing an anti-SLAPP motion (for state law claims) and a Motion to Dismiss (for the copyright claim). Exh. A (Zabel Decl.), ¶22 and Exh. 1. Counsel emphasized that with the anti-SLAPP motion, Zabel would have to pay Sanchez's attorneys' fees. Exh. A (Zabel Decl.), ¶¶15, 19; Dkt. 18-8 at 5 (top). And the clock was running. "Ms. Sanchez intends to file the anti-SLAPP motion in seven days—January 16." Exh. A (Zabel Decl.), ¶22 and Exh. 1.

The assertions during this meet and confer amounted to Defendant's contention that Zabel's case lacked any merit. Both a motion to dismiss and an anti-SLAPP motion rely on the same requirement that the claim lacks merit. *See* California Code of Civil Procedure § 425.16(b)(1) (anti-SLAPP standard) and Motion at 13 (Rule 12(b)(6) standard). Essentially, Zabel was being pressed to accede to Defendant's contention that the case needed to be dismissed or Zabel would have to pay Sanchez's attorneys' fees.

Given the full context, the second dismissal (dismissal of the prior federal case) was *with* "being compelled by the other party" to do so. *See Lake at Las Vegas*,

933 F.2d at 726. Thus, it was not "voluntary" under Rule 41 and the two-dismissal rule does not now apply. *Id.*

### B. Prior Dismissal is a "Limited Circumstance" Outside Rule 41

Even if the prior dismissals are found to be voluntary, Rule 41 should not apply as the circumstances of the prior dismissals qualify as a "limited circumstance" where "Rule 41 will not be literally applied." *See Axon Enterprise*, 2018 U.S. Dist. LEXIS 2992, at *15 (January 5, 2018).

If there are to be circumstances that qualify as such "limited circumstances," it must be found in this case. Regarding the first dismissal, Plaintiff, then a pro se litigant, mistakenly filed in a court that lacked jurisdiction to hear the claim, which necessitated a dismissal. Dkt. 18 at 12 (§ II.D.); Dkt. 18-4. Regarding the second dismissal, shortly after the case began, on January 7, 2025, devastating wildfires broke out in L.A. county. Due to this unexpected state of emergency, Plaintiff, still pro se, evacuated her home and assisted friends and others in dealing with utter devastation caused by the fires. Exh. A (Zabel Decl.), ¶¶10-12. Then, on January 9, opposing counsel compelled Plaintiff to dismiss her case by alleging grounds to file a motion to dismiss and an anti-SLAPP motion. *Id.*, ¶¶15, 22 and Exh. 1. Defendant also contended that with the anti-SLAPP motion, Plaintiff would have to pay all of Defendant Sanchez's attorneys' fees. *Id.*, ¶¶15, 18.

If all that was not enough, Plaintiff's 16-year-old beloved pet dog had became deathly ill and needed significant medical attention just prior to the parties' meet and confer. Exh. A (Zabel Decl.), ¶13. Recall that Plaintiff does not have a law firm or even a lawyer doing the work of representation, so her life events affect her ability to address the demands of her case. *Id.*, ¶14. This cumulation of events, which were

outside Plaintiff's control, made litigating the matter an extreme difficulty (perhaps even impossible). *Id.*, ¶16.

In an effort to lessen the extremity of her situation and give her time to carefully consider the requirements of the litigation, Zabel asked Sanchez to agree to stay the case for a short period of time—two to three weeks. Exh. A (Zabel Decl.), ¶¶14, 19; Dkt. 18-8 at 10 (email request).[2] Despite the routine nature of requests for delays early in a case, Sanchez refused, which kept the pressure on Zabel to act. *Id.* While Defendants contend that at this time, "*there was no time pressure on Plaintiff to do anything*" (Dkt. 18 (Motion) at 17 (§ V.B.) (emphasis in original)), such a contention is disingenuous at best. Defendants fail to acknowledge the primary pressure facing Zabel—the pressure they had created by threatening to file an anti-SLAPP motion and to seek attorneys' fees.[3] It is notable that the case was dismissed on January 16—the deadline Defendant had identified for filing the anti-SLAPP motion. Dkt. 18-10 at 2. Defendant got what she sought.

Given the totality of the circumstances, Plaintiff's case should be seen as a rare, "limited circumstance" when Rule 41's two-dismissal rule will not be literally applied. In a case with similar facts as here, the court in *Axon* held that "[a]lthough

---

[2] Zabel uses both the terms stay and extension of time in her various communications. As a pro se litigant, it is understandable that she did not appreciate the different meanings for these terms. Put simply, she was asking for more time to make critical decisions regarding her case and her legal rights. Given the circumstances, such a request seems extremely reasonable.

[3] Defendants contend Plaintiff had only to serve Defendant, but this too is not true as Defendant's counsel had already agreed to accept service via email. Further, Defendant must have had a copy of the complaint in order to demand a meet and confer to allege a motion to dismiss.

1  Plaintiff has twice voluntarily dismissed actions based on or involving the same …
2  claim alleged here, … strict application of Rule 41 would not further its purposes,
3  nor would such a harsh result comport with the spirit and intent of the rules of civil
4  procedure." *Axon Enterprise,* 2018 U.S. Dist. LEXIS 2992, at *19 (January 5, 2018).

5  In *Axon*, the court identified multiple cases where courts had found exceptions
6  to the two-dismissal rule including *Lake at Las Vegas* from the Ninth Circuit (where
7  an exception was not found) and *Poloron* from the Second Circuit (where an
8  exception was found). *Axon Enterprise*, 2018 U.S. Dist. LEXIS 2992, at *14-16
9  (January 5, 2018). The *Axon* court acknowledged that the Ninth Circuit had applied
10 the two-dismissal rule in *Lake at Las Vegas*, but analyzing that case and others, the
11 *Axon* court concluded that "the Ninth Circuit is willing in special cases to look at the
12 circumstances behind the underlying dismissals to determine whether strict
13 application of Rule 41 furthers its intended purposes." *Id.* at *16; *see also id.* at *17
14 (analyzing additional cases and finding, "[w]hen faced with similar factual
15 circumstances, other courts have declined to apply the two dismissal rule.").

16 As is true for the present case, the *Axon* court found that the prior dismissals
17 in that case fell "somewhere between the unilateral actions seen in *Lake [at Las*
18 *Vegas]* and the stipulated voluntary dismissal in *Poloron*" because counsel had
19 exchanged emails regarding potential grounds for a demurrer and had held a meet
20 and confer. *Id.* at *16-17. The *Axon* court's analysis and conclusion holds just as true
21 for this case. Here too, the parties exchanged emails regarding potential grounds for
22 a dismissal and had held a meet and confer. As the *Axon* court explained, "[c]ivil
23 litigation in federal court is not a game of gotcha." *Id.* at *18 (quotation omitted).]
24

      Contrary to Defendants' bare assertion, *Axon* is neither contrary to *Lake at Las Vegas* nor overruled by *Rose Court*. *See* Dkt. 18 (Motion) at 16 (§ V.B.). In reality, *Axon*'s holding is supported by *Lake at Las Vegas* and even relies on that decision. *Id.* at *15. And *Rose Court* did not involve an assertion of a limited circumstance when Rule 41 would not apply or otherwise address this issue. *See Rose Court, LLC v. Select Portfolio Serv., Inc.*, 119 F.4th 679 (9th Cir. 2024). Thus, nothing in *Rose Court* could be seen as overruling the finding in *Axon*.

      As explained, if there are to be circumstances that qualify as "limited circumstances" where Rule 41 "will not be literally applied," such must be found in this case. *See Axon Enterprise*, 2018 U.S. Dist. LEXIS 2992, at *15 (Jan. 5, 2018) (citing to *Lake at Las Vegas*, 933 F.2d at 727).

### C. Rule 41 Does Not Apply to Collective or Simon & Schuster

      Defendants contend that a Rule 41 bar would equally apply to the other defendants, Collective and Simon and Schuster. Dkt. 18 (Motion) at 18 (§ V.C.). But Defendants misstate the law. As explained in *Rose Court*, the general rule is that "only defendants named as a party in the prior two dismissed actions may invoke the two-dismissal rule." *Rose Court*, 119 F.4th at 688. The exception to this rule, the court explains, is that "the rule applies even to a defendant who was not previously named if that defendant is 'substantially the same as the defendant dismissed.'" *Id.* (citing *Lake at Las Vegas*, 933 F.2d at 728). Here, neither Collective nor Simon & Schuster are substantially the same as each played a different role and each is responsible for a different infringement of Plaintiff's copyright. See Dkt. 12 (Complaint), ¶¶ 57, 81, 98-99 (explaining different roles of Defendants). As such, Collective and Simon & Schuster cannot avoid this lawsuit.

## III. PLAINTIFF PLEADS A VALID COPYRIGHT CLAIM

"Copyright law protects an author's expression; facts and ideas within a work are not protected." *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990). Originality is the requirement for copyright protection. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346 (1991). And for writings, such as those at issue here, "originality requires independent creation plus a modicum of creativity." *Id.* The bar is not high to qualify for copyright protection.

To establish copyright infringement, two elements are needed: (1) that plaintiff owns the copyright and (2) that defendant copied protected elements of the work. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). As Defendants contend, access and substantial similarity will satisfy the "copying" element. *See* Dkt. 18 (Motion) at 20 (§VI.). But contrary to their assertion, this circumstantial path is not the *required* way to establish copying. Though not commonly available, this element can separately be proven by direct evidence of copying. *See Broderbund Software, Inc. v. Unison World, Inc.*, 648 F.Supp. 1127, 1135 (N.D. Cal. 1986); *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018) (explaining copying can be proven circumstantially when direct evidence of copying is lacking).

### A. The Allegations Support the Potential for Direct Evidence

The Complaint alleges that Sanchez copied directly from Zabel's book, *Dharma Kitty Goes to Mars* ("*Dharma Kitty*"). For example, in addition to alleging that Sanchez copied "content, subject matter, plot points, scenes and story arcs," the Complaint explicitly alleges that "for each page of Sanchez's book, the primary subject matter and/or action is taken *directly* from Zabel's book." Dkt. 12

(Complaint), ¶60 (emphasis added). The Complaint then provides a chart that illustrates the level of direct copying that had to have taken place in order for *The Fly Who Flew to Space* to have been written. *See id.*, ¶61 (chart); *see also*, *id.*, ¶63. Reviewing the two books page-by-page (the chart can be used as a guide), it becomes clear that, as alleged, the similarities "between the two books could not have occurred without copying the original expression in … *Dharma Kitty*." Dkt 12, ¶63.

The Complaint also alleges, and provides evidence, that "Sanchez also substantially copied specific scenes from Zabel's book." Dkt. 12, (Complaint) ¶67; *see also id.*, ¶¶67-69 (sample page images). In these examples, the images from the two books are so similar that direct copying is more than just probable. Notably, Defendants make no attempt to explain the similarities between these identified scenes. Nor do they contend that these allegations do not contain protectable subject matter. These allegations are simply ignored.

Given the allegations regarding direct copying, Plaintiff should be afforded discovery to pursue these claims. While Plaintiff acknowledges it is rare to have direct evidence of copying, given the similarities between the two books (see § III.B. below for more) and the history between the parties, such evidence becomes more likely. The presently available evidence mandates that discovery be afforded to pursue these allegations. Thus, Defendants' Motion must be denied.

B.   **Substantial Similarity**

Even if direct evidence of copying does not exist, Plaintiff's allegations are more than sufficient to establish a claim for copyright infringement based on substantial similarity. Substantial similarity is largely a question of fact. Thus, "[s]ummary judgment is 'not highly favored' on questions of substantial similarity

in copyright cases." *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012) (quoting *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir.1990)). And if questions of substantial similarity are not highly favored at summary judgment, they must be even less favored at the pleading stage. Defendants have not met their burden here.

Defendants' efforts to minimize Plaintiff's original expression are substantial, but they are misdirected and overreaching. While it is true that one cannot claim a copyright in elements such as facts, ideas, and *scene a faire* on their own, the way in which such elements are used can contribute to a protectable copyright and can be used to show infringement. "To prove copying, the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work. They just need to be similarities one would not expect to arise if the two works had been created independently." *Rentmeester v. Nike*, 883 F.3d 1111, 1117 (9th Cir. 2018). Here, the level of similarity between the two works would not be expected had the works been created independently.

In their attempt to show a lack of substantial similarities, Defendants' assertions focus narrowly on individual elements listed in the Complaint. *See* Dkt. 18 (Motion) at 23-28 (§ VI.B.). Defendants contend that, individually, the specific scenes or elements are not protectable. *Id.* Their analysis is mostly reliant on a chart (or table) provided in the Complaint to illustrate the copying of Plaintiff's work. *See id.* at 23 (explaining contentions are focused on "table" in the Complaint); see also Dkt. 12 (Complaint), ¶61 (provided chart). While Plaintiff does not concede that each scene or element identified by Defendants is unprotectable, Defendants misunderstand (or misrepresent) the significance of Plaintiff's chart. Despite

Defendants' contentions and inferences otherwise, nowhere does Plaintiff allege that the chart is a list of protectable elements found in Plaintiff's work. To the contrary, the Complaint explains that "the overall selection of scenes and the placement of the selected scenes in the overall story shows that Sanchez copied [Zabel's] original expression." Dkt. 12 (Complaint), ¶64. Defendants do not even attempt an argument refuting this allegation. The chart is not presented as a list of copyrightable features that were copied. Rather, the chart is provided to illustrate the protectable expression that was copied—Plaintiff's selection of scenes and the chosen sequence of scenes. Comparing the two books, it is evident that these are nearly identical from beginning to end. *Id.*, ¶66. This selection and sequence of events is protectable expression. "[A]fter filtering out unprotectable elements like ideas and *scènes à faire,* many protectable elements of expression remain that can be objectively compared." *Rentmeester v. Nike*, 883 F.3d 1111, 1118 (9th Cir. 2018). Such protectable elements include, "*plot*, themes, dialogue, mood, setting, pace, characters, and *sequence of events*." *Id.* at 1118-19 (emphasis added) (quoting *Funky Films, Inc. v. Time Warner Entertainment Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006)).

Had the two works in this matter been created independently, one would not expect the plot points and storyline found at *every page* of Defendant's work to map directly onto the plot points and storyline found in Plaintiff's work. "At each page, there are innumerable opportunities to change course, take a different turn, create a different plot point, introduce a different storyline. But here, the two stories share the same storyline at each page, as illustrated in part by the table above." Dkt. 12 (Complaint), ¶66. Certainly, such similarity provides sufficient *pleading* for a copyright infringement claim.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

13

In addition to the similarities found in the storyline, the two works share multiple scenes that are remarkably similar visually. The Complaint details multiple scenes from each book where Defendant presents her story with a strikingly similar visual depiction for the already similar plot point or storyline. *See* Dkt. 12 (Complaint), ¶¶67-69 (and accompanying screen shots from each book). Again, the level of similarity shown here would not be expected had the works been created independently. *See Rentmeester*, 883 F.3d at 1118. Tellingly, Defendants do not address these allegations.[4]

Ultimately, Defendants fail to address the actual allegations of copyright infringement made in the Complaint. Instead, their arguments are focused narrowly on specific elements, which does not address the alleged similarities between the two works. Thus, Defendants' Motion must be denied.

## IV. CONCLUSION

As explained, Rule 41 does not bar the present suit as Plaintiff's prior federal case was not "voluntarily" dismissed as that term has been defined by the Ninth Circuit. *Lake at Las Vegas*, 933 F.2d at 726. Even if that dismissal were to be deemed to be voluntary, the circumstances in which the case was dismissed qualify a "limited circumstance" when Rule 41 "will not be literally applied." *Axon Enterprise*, 2018 U.S. Dist. LEXIS 2992, at *15 (Jan. 5, 2018). Additionally, Plaintiff pleads a valid

---

[4] Defendants allege that certain allegations in the Complaint are irrelevant and meant for an improper purpose. *See* Dkt. 18 (Motion) at 29 (§ VI.D.). Defendants are again wrong. The identified allegations provide context to the infringement contentions and are relevant to the question of access (to show copying) and to motive for copying, which can be relevant to a potential fair use defense.

claim for copyright infringement. First, the alleged facts illustrate the potential for direct evidence of copying protectable elements of Plaintiff's work. Second, Defendant's Motion does not address the relevant elements of Plaintiff's allegations of infringement. Plaintiff sufficiently pleads copying of protectable elements of her copyrighted work including "similarities one would not expect to arise if the two works had been created independently." *Rentmeester*, 883 F.3d at 1118. For all the foregoing reasons, Defendants' Motion must be denied.

DATED: August 15, 2025                MANGUM RIRIE LLP

                                      By:    /s/ Rustin Mangum
                                              Rustin K. Mangum
                                              Attorney for Plaintiff

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4100 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 15, 2025

By: ___/s/ Rustin Mangum_____
    Rustin Mangum